CONNECTICUT EDUCATION ASSOCIATION, INC., ET AL.
*v.* GERALD TIROZZI ET AL.
(13380)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued January 3—decision released March 7, 1989

*Ronald Cordilico* and *Robert F. McWeeny,* for the appellants (plaintiffs).

*John R. Whelan,* assistant attorney general, with whom were *Robert C. Walsh,* certified legal intern, and, on the brief, *Joseph I. Lieberman,* former attorney general, for the appellees (defendants).

*Patrice A. McCarthy* filed a brief for the Connecticut Association of Boards of Education as amicus curiae.

PETERS, C. J. The dispositive issue in this case, which comes to us by way of reservation, is whether General Statutes (Rev. to 1989) § 10-145b (i)[1] violates the plain-

---

[1] General Statutes (Rev. to 1989) § 10-145b (i) provides: "Unless otherwise provided in regulations adopted under section 10-145d, in not less than three years nor more than ten years after the issuance of a provisional teaching certificate pursuant to subsection (d) of this section and upon the statement of the employing board of education that the person who holds or has held a provisional certificate has successfully completed course work pursuant to subsection (h) or (j), as appropriate, and has a record of competency in the discharge of his or her duties during such provisional period, the state board, upon receipt of a proper application, shall issue to a person who holds or has held a provisional certificate, a standard teaching certificate prior to July 1, 1989, and a professional educator certificate on or after said date. A signed recommendation from the superintendent of schools for the local or regional board of education or by the superintendent of a nonpublic school approved by the state board of education shall

tiffs' due process and contractual rights guaranteed by the federal and state constitutions. The plaintiffs, the Connecticut Education Association, Inc., the Connecticut State Federation of Teachers, Phyllis Greene and Harriet Strain, brought suit in the Superior Court seeking a declaratory judgment that General Statutes (Rev. to 1989) § 10-145b (i) is unconstitutional. The trial court granted the parties' motion for reservation to the Appellate Court upon stipulated facts to determine the provision's constitutionality. We transferred the case here pursuant to Practice Book § 4023 and now answer the reserved question[2] in the negative.

Pursuant to Practice Book § 4148, the parties stipulated to the following facts. The plaintiffs, the Connecticut Education Association, Inc., and the Connecticut State Federation of Teachers, Inc., are nonprofit corporations and labor organizations representing public school teachers and local teacher bargaining representatives pursuant to General Statutes § 10-153a. The plaintiff

be evidence of competency. Such recommendation shall state that the person who holds or has held a provisional teaching certificate has successfully completed at least three school years of satisfactory teaching for one or more local or regional boards of education or approved nonpublic schools. Any person holding a standard or permanent certificate on July 1, 1989, shall be eligible to receive upon application a professional educator certificate to replace said standard or permanent certificate. On and after July 1, 1989, standard and permanent certificates shall no longer be valid."

The legislature initially enacted this provision as Public Acts, Spec. Sess., May, 1986, No. 1, § 23 (i), and then by Public Acts 1988, No. 88-273, changed its effective date from July 1, 1988, to July 1, 1989. The legislature had not yet amended the act prior to the reservation and, therefore, the record refers to No. 86-1. We will refer to the challenged provision as General Statutes (Rev. to 1989) § 10-145b (i) throughout this opinion.

[2] The question of law reserved for our advice is: "Whether [General Statutes (Rev. to 1989) § 10-145b (i)] as it applies to holders of standard or permanent certificates is unconstitutional under Article First, Section 8, amended by Article XVII of the Connecticut Constitution, and/or Article First, Section 10 of the United States Constitution, and/or the Fifth Amendment of the United States Constitution and/or the Fourteenth Amendment to the United States Constitution."

Phyllis Greene resides in Portland, teaches in the Portland public school system and holds a standard teaching certificate issued by the state department of education. The plaintiff Harriet Strain resides in Killingworth, teaches in Old Saybrook and holds a permanent teaching certificate also issued by the state department of education. The defendant Gerald Tirozzi, the state commissioner of education, and the defendant state board of education (board) are jointly charged with the general supervision and control of the state's educational interests. See General Statutes §§ 10-1, 10-3a and 10-4.

Several statutes provide a frame of reference for the issues in this case. General Statutes (Rev. to 1989) § 10-145,[3] enjoins local boards of education from employing or paying any teacher who does not hold an appropriate state-issued teaching certificate. See *Ames* v. *Board of Education,* 167 Conn. 444, 446, 356 A.2d 100 (1975). Related statutes confer upon the defendant board the responsibility for issuing teaching certificates and adopting certificate regulations. General Statutes (Rev. to 1989) §§ 10-144o, 10-145a (a), 10-145d (a) and 10-146b.

Before May, 1986, a two-tiered certification process governed Connecticut school teachers. Newly certified teachers received "provisional teaching certificates," valid for no fewer than three years. Thereafter, teachers became eligible to receive a "standard teaching certificate," valid for life and revocable only "for cause," as provided by statute. General Statutes (Rev. to 1985)

---

[3] General Statutes (Rev. to 1989) § 10-145 provides in pertinent part: "No teacher, supervisor, administrator, special service staff member or school superintendent shall be employed in any of the schools of any local or regional board of education unless such person possesses an appropriate state certificate, nor shall any such person be entitled to any salary unless such person can produce such certificate dated previous to or the first day of employment."

§ 10-144o; General Statutes (Rev. to 1989) § 10-145b (m);[4] *Ames* v. *Board of Education,* supra, 446.

On July 2, 1986, the General Assembly passed the legislation presently at issue, Public Acts, Spec. Sess., May, 1986, No. 1, entitled "An Act Concerning Education Enhancement" (act). The act, as amended by Public Acts 1988, No. 88-273, replaced the two-tiered certificate system with a three-tiered system, beginning with an "initial educator certificate," graduating to a "provisional educator certificate" and finally to a "professional educator certificate." General Statutes (Rev. to 1989) § 10-144o (2), (5) and (7).[5] To remain cer-

---

[4] General Statutes (Rev. to 1985) § 10-144o provides in pertinent part: "As used in section 10-145 to 10-159a, inclusive . . .

"(2) 'Provisional certification period' means an initial period of no less than three years, during which the applicant for a standard teaching certificate performs the duties of a teacher;

"(3) 'Provisional teaching certificate' or 'provisional certificate' means a license to teach during the provisional certification period, issued to a person who meets in full the preparation requirements of the state board of education;

"(4) 'Standard teaching certificate' or 'standard certificate' means a license to teach issued to one who has successfully completed no less than three years of satisfactory teaching experience and fulfilled other requirements while holding a provisional certificate or its equivalent."

The predecessor to the "standard teaching certificate" was the "permanent teaching certificate," as held by the plaintiff Strain. See General Statutes (Rev. to 1975) § 10-145a (5).

General Statutes (Rev. to 1989) § 10-145b (m) provides: "The state board of education may revoke any certificate issued pursuant to this section for any of the following reasons: (1) The holder of the certificate obtained such certificate through fraud or misrepresentation of a material fact; (2) the holder has persistently neglected to perform the duties for which certification was granted; (3) the holder is professionally unfit to perform the duties for which certification was granted; (4) the holder is convicted in a court of law of a crime involving moral turpitude or of any other crime of such nature that in the opinion of the board continued certification would impair the standing of certificates issued by the board; or (5) other due and sufficent cause. Revocation shall be in accordance with procedures established by the state board of education pursuant to chapter 54."

[5] General Statutes (Rev. to 1989) § 10-144o (2), (5) and (7) provide: "(2) 'Initial educator certificate' means a license to teach issued on or after July

tified to teach, those teachers holding standard or permanent teaching certificates must, by July 1, 1989, exchange them for professional educator certificates. The standard or permanent teaching certificates will be invalid after July 1, 1989. General Statutes (Rev. to 1989) § 10-145b (i). Thus, by July 1, 1989, over 30,000 active teachers must surrender their teaching certificates.

The new professional educator certificates will be issued for five year renewable terms. The act, however, conditions the renewal of the certificates solely upon each teacher's "successful completion of professional development activities which shall consist of not less than nine continuing education units [CEUs] or their equivalent . . . during each successive five-year period." General Statutes (Rev. to 1989) § 10-145b (*l*) (1).[6] The act requires state and local or regional

1, 1989, to a person who has successfully met the preparation and eligibility requirements specified by the state board of education for entrance into a beginning educator program . . .

"(5) 'Provisional educator certificate' means a license to teach, issued on or after July 1, 1989, to a person who (A) has successfully completed the beginning educator program and not less than one school year of successful teaching in a public school or (B) has completed at least three years of successful teaching in a public or nonpublic school approved by the state board of education or appropriate governing body in another state within ten years prior to application for such provisional educator certificate . . .

"(7) 'Professional educator certificate' means a license to teach issued on or after July 1, 1989, initially to a person who has successfully completed not less than three school years of teaching in a public school or nonpublic school approved by the state board of education while holding a provisional educator or provisional teaching certificate and has successfully completed not fewer than thirty semester hours of credit beyond a bachelor's degree. Said certificate shall be continued every five years after issuance upon the successful completion of not less than nine continuing education units or their equivalent, as defined by the state board of education, during each successive five-year period. The successful completion of continuing education units shall only be required for certified employees of local and regional boards of education."

[6] The renewal requirement applies only to "employees of local and regional boards of education." General Statutes (Rev. to 1989) § 10-145b (*l*). There-

boards of education to underwrite the entire cost of CEU offerings.[7] As the plaintiffs conceded at oral argument before this court, the only burden that the act imposes upon teachers already holding standard or permanent teaching certificates is the successful completion of the CEUs.

The provisions for the exchange of certificates and for the continuing education were enacted as part of a comprehensive legislative package intended to upgrade public education in this state. A major purpose of the act was to attract a greater number of qualified people to enter and to remain in the teaching profession. Recognizing the importance of higher salaries to the achievement of this goal, the legislature offered state money to each local and regional school district so that new teachers could be hired at a "state designated target minimum salary." General Statutes (Rev. to 1989) §§ 10-257a (e), 10-257b. Further funding was provided to school districts so that they could increase the salaries of experienced teachers, address the problem of crowded classrooms, provide mentor and assessment programs and otherwise enhance their general educational offerings. General Statutes (Rev. to 1989) §§ 10-257c, 10-257d and 10-257f. In return for these financial enhancements of the teaching profes-

fore, years that a professional educator certificate holder is not employed by a local or regional board of education do not count against the five years for which the certificate is valid. General Statutes (Rev. to 1989) § 10-146b also provides for an extension of time to complete the requirements in instances of hardship and § 10-145b (n) provides for appeal to the board and to the Superior Court for aggrieved individuals.

[7] The state and the local or regional boards of education will share the cost of offering the CEUs and each local or regional board must make available within their district no fewer than eighteen units per year. The teachers and their collective bargaining representatives will have input into the choice of the subject matter, time and location of the classes. General Statutes (Rev. to 1989) § 10-145b (*l*) (1). For those who must exchange certificates, the state even waives the $15 application fee. General Statutes (Rev. to 1989) § 10-145b (p).

sion as a whole, individual teachers are being required to improve their own teaching skills by completing nine CEUs within five teaching years after they receive their new professional educator certificates in July, 1989. The plaintiffs claim that the mandatory substitution of these certificates for the teaching certificates they presently hold will violate their constitutional rights to due process and to protection of contracts.

## I

The plaintiffs make two separate due process arguments: procedural and substantive. We conclude that the act does not violate the plaintiffs' due process rights in either respect.

## A

Analysis of the plaintiffs' procedural due process claim requires a three part inquiry: (1) did the plaintiffs have a property interest in their standard and permanent teaching certificates; (2) does General Statutes (Rev. to 1989) § 10-145b (i) deprive them of that property interest; and (3) did the deprivation of the interest occur without due process of law?[8] Although we agree with the plaintiffs that they have a property interest that is constitutionally cognizable, we conclude that this interest has not been unconstitutionally impaired.

---

[8] The plaintiffs claim that the act takes property without due process in violation of the amendments to the fourteenth amendment to the United States constitution and article first, § 8, as amended by article XVII of the amendments to the Connecticut constitution. Because the language of the provisions are similar, and because the plaintiffs " '[have] proffered no argument that the rights afforded to [them] by the federal and state constitutions are in any way distinguishable with respect to the substantive issue that [they have] raised' "; *State* v. *Chung,* 202 Conn. 39, 45 n.7, 519 A.2d 1175 (1987); *State* v. *Braxton,* 196 Conn. 685, 688 n.2, 495 A.2d 273 (1985); we do not independently undertake such an analysis. See also *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 494 n.8, 362 A.2d 785 (1975).

"Property" is a "broad and majestic" term and a great constitutional concept " 'purposely left to gather meaning from experience.' " *Board of Regents* v. *Roth,* 408 U.S. 564, 571, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), quoting *National Mutual Ins. Co.* v. *Tidewater Transfer Co.,* 337 U.S. 582, 646, 69 S. Ct. 1173, 93 L. Ed. 1556 (1949) (Frankfurter, J., dissenting). Property interests are more than abstract needs, desires or unilateral expectations of benefits or privileges. Rather, a person must have "a legitimate claim of entitlement" to a benefit or privilege to have a property interest in that benefit. *Board of Regents* v. *Roth,* supra, 577. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .' " *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 538, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), quoting *Board of Regents* v. *Roth,* supra, 577; see also *Paul* v. *Davis,* 424 U.S. 693, 709, 96 S. Ct. 1155, 47 L. Ed. 2d 405, reh. denied, 425 U.S. 985, 96 S. Ct. 2194, 48 L. Ed. 2d 811 (1976). "The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' " *Logan* v. *Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982). A person has an entitlement in a benefit or privilege if there are "rules or mutually explicit understandings that support his claim of entitlement to the benefit . . . that he may invoke at a hearing." *Perry* v. *Sinderman,* 408 U.S. 593, 601, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972); see also *Bishop* v. *Wood,* 426 U.S. 341, 344, 96 S. Ct. 2074, 48 L. Ed 2d 684 (1976); *Bartlett* v. *Krause,* 209 Conn. 352, 362–63, 551 A.2d 710 (1988); 2 R. Rotunda, J. Nowak & J. Young, Constitutional Law: Substance and Procedure (1986) § 17.5, pp. 234–36.

Under the governing statutes and case law, the rights of Connecticut school teachers in their teaching certificates qualify as a property interest because these certificates are needed in order to obtain and maintain a teaching position. General Statutes (Rev. to 1989) § 10-145. Connecticut law provided, prior to the act at issue, that the defendant board could only revoke a teacher's certificate "for cause," as defined specifically by statute. General Statutes § 10-145b (m).[9] Accordingly, we have expressly held that "[a] teacher who is given by statute the right to continued employment except upon a showing of cause or the bona fide elimination of his position . . . acquires a property right that is entitled to protection under the due process clause." *Lee* v. *Board of Education,* 181 Conn. 69, 72, 434 A.2d 333 (1980). Our holding in *Lee* readily encompasses the proposition that teachers also have a property interest in the rights that inhere in the underlying certificates guaranteeing their employment. "Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood. . . . In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Bell* v. *Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971) (driver's license of a clergyman whose ministry required travel by car); see also *Pet* v. *Department of Health Services,* 207 Conn. 346, 353–54, 542 A.2d 672 (1988) (license to practice medicine); *Leib* v. *Board of Examiners for Nursing,* 177 Conn. 78, 83, 411 A.2d 42 (1979) (registered nurse's license); *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles,* 165 Conn. 42, 45, 327 A.2d 588 (1973) (license to sell and repair automobiles).

---

[9] See footnote 4, supra.

The conclusion that the plaintiffs have a constitutionally protected property interest in their certificates does not of course establish that these property rights have been unconstitutionally compromised by the enactment of General Statutes (Rev. to 1989) § 10-145b (i). It bears repeating that, on July 1, 1989, the plaintiffs' new certificates will afford them the very same rights they had before the act's passage except that they will have to complete nine CEUs, or their equivalent, within five teaching years, in order to renew their certificates for another five years.

Significantly, the plaintiffs do not contend that the constitution prevents the state, or even a local or regional school board, from imposing additional educational requirements as a condition for continued service as a teacher. Federal cases support the proposition that such educational requirements do not create an unconstitutional burden. " '[L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations.' " *United States* v. *Locke,* 471 U.S. 84, 104, 105 S. Ct. 1785, 85 L. Ed. 2d 64 (1985), quoting *Usery* v. *Turner Elkhorn Mining Co.,* 428 U.S. 1, 16, 96 S. Ct. 2882, 49 L. Ed. 2d 752 (1976). Furthermore, "[e]ven with respect to vested property rights, a legislature generally has the power to impose new regulatory constraints on the way in which those rights are used, or to condition their continued retention on performance of certain affirmative duties. As long as the constraint or duty imposed is a reasonable restriction designed to further legitimate legislative objectives, the legislature acts within its powers in imposing such new constraints or duties." *United States* v. *Locke,* supra, 104; see also *Brown* v. *McGarr,* 774 F.2d 777, 782 (7th Cir. 1985) (completion of qualifying units a valid condition for admittance to the "trial bar," even for an attorney who had already been a member of the bar before the creation of the

"trial bar"). The plaintiffs implicitly concede, therefore, that the legislature could constitutionally have subjected their existing teacher certificates to divestment, under § 10-145b (m) or otherwise, should they fail to complete the nine CEUs within five teaching years.

The explicit focus of the plaintiffs' constitutional argument is their dissatisfaction with the statutory mandate that they trade lifetime certificates for renewable ones. We are not persuaded that the difference between the existing standard and permanent teaching certificates and the prospective professional educator certificate is a distinction of constitutional dimension, when completion of the educational requirement is the only statutory condition for renewal of the new certificates. The plaintiffs, in effect, argue that although an added educational requirement may operate constitutionally as a condition subsequent to the continuing validity of an existing teaching certificate, the identical requirement becomes unconstitutional when it is a condition precedent to renewal of a new certificate. Our reading of the relevant constitutional cases discloses no support for this proposition. See, e.g., *Rogers* v. *Bellei,* 401 U.S. 815, 833–34, 91 S. Ct. 1060, 28 L. Ed. 2d 499 (1971); *Ramos-Hernandez* v. *Immigration & Naturalization Service,* 566 F.2d 638, 642 (9th Cir. 1977). Taking into account the legislature's laudable objective of upgrading education, we conclude that the act does not constitute a significant present impairment or deprivation of the plaintiffs' property interests in their teaching certificates, and therefore does not violate their procedural due process rights.[10]

---

[10] As of July 1, 1989, the teachers must give up their standard and permanent teaching certificates. No teacher will suffer any termination as of that date, however, unless he or she fails to exchange the certificate. The process of exchange depends only on the filing of a proper application and the receipt of a new certificate requires only a ministerial act. No issue of nonrenewal can arise for five more years, and such an event, according to the statute, will occur only if the holders have then arguably failed to

Even were we to find that the act unconstitutionally impairs the plaintiffs' property interests, " 'the question remains what process is due' "? *Federal Deposit Ins. Corporation* v. *Mallen,* 486 U.S. 230, 240, 108 S. Ct. 1780, 100 L. Ed. 2d 265 (1988); *Morrissey* v. *Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). The "root requirement" of the due process clause is that the state actor afford individuals notice and an opportunity for a hearing before depriving them of their property interests. *Cleveland Board of Education* v. *Loudermill,* supra, 542; *Boddie* v. *Connecticut,* 401 U.S. 371, 379, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971); *Bartlett* v. *Krause,* supra, 372. Although the defendants concede that there was no hearing at which individual teachers had the opportunity to protest the termination of their existing certificates, the legislature provided the plaintiffs with all the process that is their constitutional due. "In altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements." *United States* v. *Locke,* supra, 108; *Texaco, Inc.* v. *Short,* 454 U.S. 516, 532, 102 S. Ct. 781, 70 L. Ed. 2d 738 (1982). In this case the proposed act had been much publicized and the plaintiffs had not only been afforded "a reasonable opportunity to familiarize themselves" with it, but the two plaintiff unions, which also represent the individual plaintiffs, participated in the committee hearings leading up to the act. See Conn. Joint

complete the required CEUs. The defendants admitted as much in open court. The present record lends no support to any speculative concern that the renewal mechanism provided by the act will be used by the state to revoke certificates for unauthorized reasons.

Standing Committee Hearings, Education, Pt. I, 1986 Sess., pp. 156–62, 169–70, 172–74 and 206–208. Thus, the legislature accorded to the plaintiffs all the process they were due.

## B

We also disagree with the plaintiffs' claim that the act violates their constitutional rights to substantive due process.[11] The plaintiffs do not belong to a constitutionally recognized suspect class and they have not alleged the impairment of a fundamental constitutional right.[12] Their claim must be tested, therefore, in accordance with the rules that normally govern constitutional challenges of economic or social welfare legislation, by ascertaining whether the legislature has acted arbitrarily or irrationally.

Constitutional attacks on the rationality of economic or social welfare legislation must rebut the presumption of constitutionality that attaches to such legislation. " '[T]he burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.' " *Duke Power Co.* v. *Carolina Environmental Study Group, Inc.,* 438

[11] While the plaintiffs' brief is unclear about whether a substantive due process argument has been distinctly raised, doubts raised about the scope of their brief at oral argument persuade us to address this issue briefly.

[12] This court and, to a certain extent, the United States Supreme Court, have recognized a right to education requiring a heightened scrutiny of state statutes infringing on the right. *Plyler* v. *Doe,* 457 U.S. 202, 223–24, 102 S. Ct. 2382, 72 L. Ed. 2d 786, reh. denied, 458 U.S. 1131, 103 S. Ct. 14, 73 L. Ed. 2d 1401 (1982); *Horton* v. *Meskill,* 172 Conn. 615, 648–49, 376 A.2d 359 (1977). The state constitutional right to free public education; Conn. Const., art. 8, § 1; protects only the rights of the recipients of educational services to a substantially equal educational opportunity. *Campbell* v. *Board of Education,* 193 Conn. 93, 105, 475 A.2d 289 (1984); *Horton* v. *Meskill,* supra, 649. Neither the state nor the federal constitution requires a stricter scrutiny merely because the regulation affects teachers. If anything, a fundamental right to equal educational opportunity supports the rationality of legislative efforts to improve the quality of that education.

U.S. 59, 83, 98 S. Ct. 2620, 57 L. Ed. 2d 595 (1978),
quoting *Usery* v. *Turner Elkhorn Mining Co.,* supra,
15; see also *Blue Sky Bar, Inc.* v. *Stratford,* 203 Conn.
14, 28, 523 A.2d 467 (1987); *Schieffelin & Co.* v. *Depart-
ment of Liquor Control,* 194 Conn. 165, 186, 479 A.2d
1191 (1984); *Brunswick Corporation* v. *Liquor Control
Commission,* 184 Conn. 75, 82–83, 440 A.2d 792 (1981).
The plaintiffs have not satisfied this heavy burden. It
was not arbitrary or irrational for the legislature to
decide that its goal of enhancing the quality of the
state's educational system as a whole required even
teachers who had attained permanent status to con-
tinue to sharpen their educational skills. We thus con-
clude that the act does not violate the plaintiffs' rights
to substantive due process.

## II

Finally, the plaintiffs argue that the act violates the
constitutional prohibition against impairment of the
obligation of their contracts with their respective
employers, the local and regional boards of education.
U.S. Const., art. I, § 10.[13] Their claim of impairment
has three predicates, not all of which are equally per-
suasive. First, General Statutes (Rev. to 1989)
§ 10-151 (c) and (d)[14] creates a continuing obligation on

---

[13] Article one, § 10, of the United States constitution provides: "No State
shall . . . pass any . . . Law impairing the Obligation of Contracts
. . . ."

[14] General Statutes (Rev. to 1989) § 10-151 (c) and (d) provide in perti-
nent part: "(c) The contract of employment of a teacher who has not attained
tenure may be terminated at any time for any of the reasons enumerated
in subdivisions (1) to (6), inclusive, of subsection (d) of this section; other-
wise the contract of such teacher shall be continued into the next school
year unless such teacher receives written notice by April first in one school
year that such contract will not be renewed for the following year. . . .

"(d) The contract of employment of a teacher who has attained tenure
shall be continued from school year to school year, except that it may be
terminated at any time for one or more of the following reasons: (1) Ineffi-
ciency or incompetence; (2) insubordination against reasonable rules of the
board of education; (3) moral misconduct; (4) disability, as shown by com-

the part of each board of education to employ the plaintiffs while they are properly certified.[15] Second, General Statutes (Rev. to 1989) § 10-145 precludes a board of education from continuing to employ or pay a teacher who does not possess a state-issued certificate. Third, any substantial impairment of their continued access to state-issued certification interferes with their employment relationships with their boards of education. We have no reason to question the first two of these predicates. With respect to the third, however, we conclude that the plaintiffs' employment contracts have not been unconstitutionally impaired by making their teaching certificates, and hence their continued employability, conditional upon their completion of nine CEUs every five teaching years, as required by General Statutes (Rev. to 1989) § 10-145b (i).

"Unlike other provisions in [article I], it is well-settled that the prohibition against impairing the obligation of contracts is not to be read literally." *Keystone Bituminous Coal Assn.* v. *DeBenedictis,* 480 U.S. 470, 502, 107 S. Ct. 1232, 94 L. Ed. 2d 472 (1987); see also *Home Building & Loan Assn.* v. *Blaisdell,* 290 U.S. 398, 428, 54 S. Ct. 231, 78 L. Ed. 413 (1934). "Thus, a finding that there has been a technical impairment is merely a preliminary step in resolving the more difficult question whether that impairment is permitted under the

---

petent medical evidence; (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher, if no other position exists to which such teacher may be appointed if qualified, provided such teacher, if qualified, shall be appointed to a position held by a teacher who has not attained tenure, and provided further that determination of the individual contract or contracts of employment to be terminated shall be made in accordance with either (A) a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization or (B) in the absence of such agreement, a written policy of the board of education; or (6) other due and sufficient cause."

[15] The plaintiffs stress that this is especially the case with respect to the named plaintiffs who are tenured and hold standard and permanent certificates.

Constitution." *United States Trust Co.* v. *New Jersey,* 431 U.S. 1, 21, 97 S. Ct. 1505, 52 L. Ed. 2d 92, reh. denied, 431 U.S. 975, 97 S. Ct. 2942, 53 L. Ed. 2d 1073 (1977). "The threshold question is whether the state law has in fact operated as a substantial impairment of a contractual relationship. *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.,* 459 U.S. 400, 103 S. Ct. 697, 74 L. Ed. 2d 569 (1983). Factors to be weighed are the severity of the impairment, the extent to which it frustrates a party's reasonable contractual expectations and the extent to which the subject matter of the impairment has been regulated in the past. Id. If the impairment is minimal the inquiry may end at the embryonic stage. *Allied Structural Steel Co.* v. *Spannaus,* 438 U.S. 234, 245, 98 S. Ct. 2716, 57 L. Ed. 2d 727, reh. denied, 439 U.S. 886, 99 S. Ct. 233, 58 L. Ed. 2d 201 (1978). If, however, the impairment is severe, the legislation will be subjected to an increased level of scrutiny." *Schieffelin & Co.* v. *Department of Liquor Control,* supra, 177–78.

Viewed from this perspective, the plaintiffs' claim of impairment of contract obligation is, in the present context, virtually indistinguishable from their substantive due process claims, which we have already rejected in part I B of this opinion. The changes wrought by General Statutes (Rev. to 1989) § 10-145b (i) do not constitute a constitutionally unacceptable impairment of the plaintiffs' teaching contracts. We are hard put to characterize that impairment as anything other than minimal. Furthermore, "[e]ven a substantial impairment of a contractual relationship may be justified if the state regulation has a significant and legitimate purpose. *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.,* supra, 403; *United States Trust Co.* v. *New Jersey,* supra, 22." *Schieffelin & Co.* v. *Department of Liquor Control,* supra, 182. As we have noted above, the act has the significant, legitimate purpose of upgrading the

state's public education system. Thus, even if we were to conclude that the act significantly impairs the plaintiffs' contractual relationships, the state has a sufficient interest in exercising its police power in this area for the act to pass constitutional muster.

The plaintiffs finally claim that the state was constitutionally obligated to pursue legislative alternatives that would have avoided "the draconian impact of invalidating 'permanent' certificates." They argue that the General Assembly could have encouraged teachers to undertake continuing education voluntarily, by financial incentives, by restricting funds to those who do not apply for professional educator certificates or by a "myriad" of other devices. We recognize that "a State is not free to impose a drastic impairment when an evident and more moderate course would serve its purpose equally well." *United States Trust Co.* v. *New Jersey*, supra, 31. We do not, however, agree that the means chosen by the legislature were so "drastic" or the suggested alternatives so likely to succeed that the legislature's course of action constituted an unconstitutional impairment of the plaintiffs' contracts of employment.

The question reserved to this court was: "Whether [General Statutes (Rev. to 1989) § 10-145b (i)] as it applies to holders of standard or permanent certificates is unconstitutional under Article First, Section 8, amended by Article XVII of the Connecticut Constitution, and/or Article First, Section 10 of the United States Constitution, and/or the Fifth Amendment of the United States Constitution and/or the Fourteenth Amendment to the United States Constitution." For the reasons stated above, we answer "No" to the reserved question.

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.