JEREMY J. JOYELL *v.* COMMISSIONER OF
EDUCATION ET AL.
(AC 16036)

O'Connell, Hennessy and Mihalakos, Js.

---

Argued February 27—officially released June 17, 1997

*Barbara J. Collins*, with whom were *Janis C. Jerman* and, on the brief, *Lisa Sosa*, for the appellant (plaintiff).

*Linsley J. Barbato*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Bernard F. McGovern, Jr.*, assistant attorney general, for the appellee (defendant).

*Opinion*

O'CONNELL, J. The genesis of this appeal is the revocation by the defendant state board of education (board) of the plaintiff's secondary school teaching certificate. The plaintiff appealed to the trial court from the board's decision pursuant to General Statutes § 4-183 of the Uniform Administrative Procedure Act (UAPA). Following a hearing, on the record, the trial

court dismissed the plaintiff's appeal, whereupon the plaintiff appealed to this court pursuant to General Statutes § 4-184.

The plaintiff claims that (1) the trial court improperly dismissed his administrative appeal despite the fact that the board's action deprived him of a property interest without due process of law and (2) the revocation of his teaching certificate was arbitrary, capricious and an abuse of the board's discretion. We affirm the judgment of the trial court.

The record discloses the following facts. The plaintiff held a Connecticut standard teaching certificate endorsed for teaching English at the secondary level. Pursuant to this certificate, the Bristol board of education employed the plaintiff to teach at Eastern High School in Bristol from January, 1965, until January, 1988, when he applied for retirement. Immediately prior to his retirement, the plaintiff had been the subject of a female student's complaint alleging inappropriate conduct of a sexual nature.

In January, 1990, the Bristol superintendent of schools learned that the plaintiff was seeking a teaching position in another school system. At that time, the superintendent wrote to the defendant state commissioner of education (commissioner), requesting revocation of the plaintiff's teaching certificate pursuant to § 10-145d-612 (b)[1] of the Regulations of Connecticut State Agencies. The superintendent's letter described the 1987 sexual misconduct complaint and also

---

[1] Section 10-145d-612 (b) of the Regulations of Connecticut State Agencies provides: "Request for revocation. A request for revocation of a certificate may be made by a board of education, by a superintendent of schools, or by any person with a legitimate interest, hereinafter called 'the requesting party.' Such request shall be in writing, signed and notarized and shall state in reasonable detail the facts upon which revocation is requested, which shall include but not be limited to relevant names of persons, dates and places. Any such request shall be filed with the Commissioner."

reported that he had received other complaints accusing the plaintiff of improper sexual conduct during his teaching career in Bristol.

Following an investigation, the commissioner determined that there was probable cause to institute proceedings to revoke the plaintiff's teaching certificate. The commissioner issued an administrative complaint that was served on the plaintiff. Regs., Conn. State Agencies § 10-145d-612 (f).[2] In his complaint, the commissioner alleged that the plaintiff engaged in sexual relations with three female students, attempted to do so with a fourth female student, and made inappropriate sexually suggestive comments to four other female students. The first incident was alleged to have occurred during the 1967–68 school year. The school years during which each of the subsequent incidents allegedly occurred were specified with the last incident occurring during the 1987–88 school year. The complaint does not name any of the students but simply refers to them as "Female Student A" etc.

The plaintiff requested a hearing, prior to which the commissioner disclosed to the plaintiff the names of the students who made the accusations and who would be testifying at the hearing. The commissioner appointed a hearing officer who conducted a twenty-

---

[2] Section 10-145d-612 (f) of the Regulations of Connecticut State Agencies provides: "Finding of probable cause. If, after reviewing the results of the investigation, the Commissioner finds that in his judgment probable cause does exist for the institution of revocation procedures, the Commissioner shall send, by registered mail, notice of such finding to the certificate holder. Such notice, in the form of an administrative complaint, shall contain the grounds upon which revocation procedures have been instituted.

"The Commissioner also shall notify the certificate holder, in writing, that within 15 days after receipt of the notice, the certificate holder may either:

"(1) Surrender his certificate to the Commissioner and waive, in writing, his right to a hearing, thereby terminating his right to serve in a position requiring such certificate; or

"(2) Request, in writing, a hearing."

nine day hearing over a ten month period. Thirty-eight witnesses testified, including the plaintiff, the eight women who had accused him of misconduct, expert witnesses called by the plaintiff and the commissioner, and other teachers and administrators at Bristol Eastern High School. In March, 1995, the parties submitted post-hearing briefs to the hearing officer.

On May 9, 1995, the hearing officer rendered a proposed decision in which she stated her understanding that the required standard of proof before her was clear and convincing evidence. Applying that standard of proof, her decision included the following eight specific factual findings: "(1) that the plaintiff engaged in sexual activity with 'Female Student A,' a nineteen year old Bristol Eastern High School [student] on two occasions during the 1967–68 school year; (2) that the plaintiff engaged in sexual activity with 'Female Student B,' a seventeen year old Bristol Eastern High School student on seven occasions during the 1971–72 and 1972–73 school years; (3) that the plaintiff engaged in sexual activity with an unidentified woman in his classroom in November 1977; (4) that the plaintiff acted in a sexually inappropriate manner with a seventeen year old Bristol Eastern High School student (L) during the 1970–71 school year, making her feel uncomfortable; (5) that the plaintiff made inappropriate sexually suggestive comments to a seventeen year old Bristol Eastern High School student (S) during the 1981–82 school year, making her feel uncomfortable; (6) that the plaintiff made inappropriate sexually suggestive comments to a sixteen year old Bristol Eastern High School student (F) during the 1980–81 and 1981–82 school years, making her feel uncomfortable; (7) that the plaintiff made inappropriate sexually suggestive comments to a seventeen year old Bristol Eastern High School student (LA), acted in a sexually suggestive manner with her, and attempted to meet her outside of the school after school hours in

December 1987; (8) that the plaintiff made inappropriate sexually suggestive comments to a seventeen year old Bristol Eastern High School student (PP) during the 1987–88 school year."

The hearing officer summarized her factual findings as follows. "The substantial, probative and reliable evidence entered into the record establishes, by clear and convincing evidence, that [the plaintiff] maintained sexual relationships with teenage girls who were students at Bristol Eastern. [The plaintiff] cultivated these relationships while he was their teacher. The cultivation of these sexual relationships directly affects the trust that is central to a healthy teacher-student relationship."

On the basis of her factual findings, the hearing officer reached the conclusions of law that the plaintiff was "unfit" to perform the duties of a teacher and that his conduct constituted "other due and sufficient cause" for revoking his license as provided by General Statutes § 10-145b (m) (3) and (5).[3]

In accordance with § 10-145d-612 (i)[4] of the Regulations of Connecticut State Agencies, each member of

[3] General Statutes § 10-145b (m) provides in relevant part: "The State Board of Education may revoke any certificate issued pursuant to sections 10-144o to 10-149, inclusive, for any of the following reasons . . . (3) the holder is professionally *unfit* to perform the duties for which certification was granted . . . or (5) *other due and sufficient cause.* . . ." (Emphasis added.)

[4] Section 10-145d-612 (i) of the Regulations of Connecticut State Agencies provides: "Decision by the Board. Unless the Commissioner and the certificate holder mutually agree to an extension, within 60 days after the closing of the record of the hearing, the subcommittee of the Board or the hearing officer shall submit a proposed final decision. The Board, within 90 days after the closing of the record of the hearing, or after the filing of the proposed final decision of a subcommittee of the Board or hearing officer or the written report of the Commissioner, if no hearing is held, shall determine by a recorded roll-call vote whether the certificate of the holder shall be revoked.

"An affirmative vote of a majority of the Board, present and voting, shall be necessary for revocation. Each member of the Board who votes shall certify either to attendance at the hearing or to having read the proposed

the board signed a statement that he or she had read the proposed decision. The plaintiff appeared at a meeting of the board with counsel who presented oral argument opposing adoption of the hearing officer's proposed decision. The board members voted five to four to adopt the proposed decision and, pursuant thereto, revoked the plaintiff's teaching certificate.

## I

## A

In his first claim, the plaintiff argues that the revocation of his teaching certificate violated his constitutional rights[5] by depriving him of a property interest without due process of law. School teachers in this state have a property interest in their teaching certificates; *Connecticut Education Assn., Inc.* v. *Tirozzi*, 210 Conn. 286, 295, 554 A.2d 1065 (1989); which may be revoked only in accordance with procedures that constitute due process of law. See *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 354, 542 A.2d 672 (1988). "Administrative due process requires . . . that a party be given notice of the case against him and an opportu-

final decision of the subcommittee or hearing officer or the report of the Commissioner. The members of the Board shall have available for review any brief filed or documentary evidence introduced at the hearing.

"At the meeting during which the revocation matter is to be decided and prior to voting on revocation, the Board, if it has not heard the matter en banc, shall provide the Commissioner and the certificate holder with the opportunity to make an oral statement regarding the proposed final decision or the report of the Commissioner, if no hearing was held. The Board may limit the length of the statement. The Board shall not provide for the introduction of any evidence during the statements.

"The Board shall state in a written opinion the reasons for its action and shall base its determination on evidence adduced at the hearing or, if no hearing is held, upon the written report of the Commissioner. Notice of the action of the Board, together with its written opinion supporting its action, shall be furnished, promptly, to the Commissioner, the certificate holder and the requesting party."

[5] The plaintiff relies on the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.

nity to be heard by a fair and impartial body." *Altholtz v. Dental Commission*, 4 Conn. App. 307, 313, 493 A.2d 917 (1985). "The 'root requirement' of the due process clause is that the state actor afford individuals notice and an opportunity for a hearing before depriving them of their property interests." *Connecticut Education Assn., Inc.* v. *Tirozzi*, supra, 298, citing *Cleveland Board of Education* v. *Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

The board is the state agency empowered by statute to revoke a teaching certificate if it finds that the holder of the certificate "is professionally unfit to perform the duties for which the certification was granted"; General Statutes § 10-145b (m) (3); or if there is "other due and sufficient cause." General Statutes § 10-145b (m) (5). The board has implemented this statute with regulations. Section 10-145d-612 (g) and (h) of the Regulations of Connecticut State Agencies gives the teacher the right to a hearing, the right to be present at the hearing, the right to cross-examine witnesses, the right to present oral argument and the right to file briefs.[6]

---

[6] Section 10-145d-612 of the Regulations of Connecticut State Agencies provides in relevant part: "(g) Provision for hearing. If there is no surrender of certificate and waiver of hearing or, if no request for a hearing is made by the certificate holder within the time period contained in subsection (f) of this section, the Board, on its own motion, made not later than 90 days following the expiration of the aforesaid 15 days, may order a hearing be held or order the Commissioner to file a written report with the Board. Such report shall be filed with the Board not more than 90 days following the Board's order for the report.

"If a hearing is requested by the certificate holder or if the Board orders a hearing on its own motion, such hearing shall be held not later than 60 days following such request or such order of the Board, unless the Commissioner and the certificate holder mutually agree to an extension. Not less than 14 days notice of such hearing shall be given. Said notice period may be mutually waived by the Commissioner and the certificate holder.

"(h) Hearing procedure. At the discretion of the Board, the hearing shall be conducted before the Board, a subcommittee of the Board or an impartial hearing officer appointed by the Board. The hearing shall be open to the public.

"The Commissioner shall represent the interests of the Department. A verbatim transcript of the hearing shall be made. Both the certificate holder

The record discloses that the board scrupulously adhered to the requirements of the statute and regulations including notice and a full hearing. Accordingly, the trial court properly concluded that the procedure used in this case protected the plaintiff's constitutional due process rights.

B

The plaintiff also complains that the commissioner and the board deprived him of his due process rights by failing to pursue a complete and thorough investigation. The plaintiff presents detailed arguments as to how he feels the investigator should have conducted his duties. The plaintiff, however, furnishes no citation to statute, regulation or case law, nor is this court aware of any, that prescribes the methodology that the investigator is required to employ. The plaintiff's citation to cases relating to the statutory powers and duties of investigators of the commission on human rights and opportunities (CHRO) are inapposite.[7] There is no analogous statute in the present case.

The trial court concluded that "the commissioner's investigation was only a distant prelude to the decision of the agency, which is the actual subject of this appeal. Subsequent to the investigation but prior to the administrative hearing, the commissioner disclosed to the plaintiff the names of his accusers. After that, there was a full evidentiary hearing at which the plaintiff's accusers

and the Commissioner shall have the right to be heard in each other's presence, to be present throughout the hearing and to cross-examine witnesses, to present oral argument and, within 31 days following the close of the hearing, to file briefs. The Commissioner and the certificate holder may mutually agree to extend the time for filing briefs. . . ."

[7] For example, a CHRO investigator is required by statute to "attempt to eliminate the [discriminatory] practice complained of by conference, conciliation and persuasion . . . ." General Statutes § 46a-83 (f). For a criticism of this statute see the dissent of Justice Borden in *Adriana* v. *Commission on Human Rights & Opportunities*, 220 Conn. 307, 329–35, 596 A.2d 426 (1991).

testified and were subjected to rigorous cross-examination. Therefore, even if the commissioner's investigation was conducted in such a way as to permit or encourage false accusations, as the plaintiff suggests, the plaintiff was given full and effective opportunity to confront the witnesses against him and combat their accusations before the board rendered its final decision. Most importantly, the proposed decision and the board's final decision are clearly based entirely on the evidence adduced at the administrative hearing, not on what may have transpired during the preliminary investigation."

The trial court finally concluded "that the manner in which the commissioner investigated the case prior to the hearing does not provide a basis for reversing the ultimate decision of the board." We agree with the trial court.

## C

The plaintiff next claims that the board violated his due process rights by bringing stale claims in violation of the statute of limitations and in violation of the doctrine of laches. Despite the absence of any legislated statute of limitations applicable to certificate revocation proceedings, the plaintiff argues that the board or its hearing officer should have created one for the plaintiff's protection.

The plaintiff's argument would have us ignore the legal principle that statutes of limitations do not generally apply to the state. "[A] universal rule in the construction of statutes limiting rights [is] that they are not to be construed to embrace the government or sovereignty unless by *express terms* or necessary implication such appears to have been *the clear intention of the legislature*, and the rights of the government are not to be impaired by a statute unless its terms are clear and explicit, and admit of no other construction."

(Emphasis added; internal quotation marks omitted.) *State* v. *Goldfarb*, 160 Conn. 320, 323, 278 A.2d 818 (1971), quoting *State* v. *Shelton*, 47 Conn. 400, 404 (1879). Furthermore, " 'a subdivision of the state, acting within its delegated governmental capacity, is not impliedly bound by the ordinary statute of limitations.' " *Dept. of Transportation* v. *Canevari*, 37 Conn. Sup. 899, 900, 442 A.2d 1358 (1992). Thus, the board as an agency of the state is not subject to a statute of limitations unless it is expressly declared by the legislature. The legislature has not chosen to include such a limitation here. General Statutes § 10-145b (m). Where, as here, the language of a statute is clear and unambiguous, courts may not by construction supply omissions in a statute merely because the court feels that it has good reasons for doing so and that the statute would thereby be improved. *Simko* v. *Zoning Board of Appeals*, 205 Conn. 413, 418, 533 A.2d 879 (1987). Additionally, the doctrine of laches may not be invoked against a governmental agency. *Aronson* v. *Foohey*, 42 Conn. Sup. 348, 355, 620 A.2d 843 (1992).

The trial court thoroughly analyzed the justification for a reliance on evidence spanning the plaintiff's entire teaching career in order to determine if the plaintiff was presently unfit to hold a teaching certificate. "In the present case, the board's task under General Statutes § 10-145b (m) (3) was to determine whether the plaintiff 'is professionally unfit to perform the duties [of a secondary school teacher].' In the context of the applicable statute, therefore, evidence of *past* misconduct would be relevant and material if it revealed a predilection for such behavior as would lead a reasonable person to conclude that the actor is *presently* unfit for licensure. As the comments of some of the board members at its meeting make clear, the board considered the evidence of past misconduct in this case as showing a continuing 'pattern' of unacceptable behav-

ior. As one member put it, 'The notion the state would be powerless because of passage of time to protect a student in the future is a notion that is simply unacceptable and I would have to reject [it].' " (Emphasis in original.)

On the basis of the lack of any applicable statute of limitations, and the other considerations previously set forth, we conclude that it was not unreasonable for the hearing officer to admit and for the board to consider evidence and testimony of past misconduct of the plaintiff, notwithstanding that such misconduct occurred beyond the time limited by statutes of limitation that would pertain in other kinds of legal actions. This conclusion is strengthened by the fact that counsel for the plaintiff had full opportunity to cross-examine each adverse witness regarding the witness' memory of events occurring in the past and did so vigorously. The plaintiff thus presented the issue of credibility and failed memory at the fact-finding stage of the proceeding, forcing the hearing officer to deal with it as a central issue in the case. Neither the trial court nor this court can intrude into the fact-finding function of the administrative agency.

### D

The plaintiff next complains that the board violated his due process rights because the case against him was not proven by clear and convincing evidence. The plaintiff cites no reported Connecticut decisions to support his contention that a license revocation hearing, although conducted under the UAPA, requires a higher standard of proof than other UAPA hearings. It is not necessary, however, that we consider whether, as a case of first impression, this type of hearing requires the heightened standard. Regardless of whether the higher standard was required, the hearing officer explicitly stated that she found "all facts . . . in this matter . . . by clear and convincing evidence." Thus, it is evident

that the plaintiff had the benefit of the higher standard even though he possibly might not have been entitled to it.

## E

In his final due process claim, the plaintiff argues that the board violated General Statutes § 4-179 (a)[8] pertaining to the UAPA procedure when all members of an agency have not heard the matter or read the record. Section 10-145d-612 (i) of the Regulations of Connecticut State Agencies establishes further procedural safeguards pertaining to this type of situation.

The plaintiff's specific complaint is that the board members did not certify that they had read the plaintiff's exceptions and briefs. Such certification is not required by either the statute or the regulation. This claim has no merit.

## II

The plaintiff also claims that the revocation of his teaching certificate was arbitrary, capricious and an abuse of discretion. In reviewing the final decision of an administrative agency, the trial court must determine whether there is substantial evidence in the administrative record to support the agency's findings of fact and whether the conclusions drawn from those facts were reasonable. *Dolgner* v. *Alander*, 237 Conn. 272, 280, 676 A.2d 865 (1996). "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act . . . and the scope of that review is very restricted. . . . Neither this court nor the trial

---

[8] General Statutes § 4-179 (a) provides: "When, in an agency proceeding, a majority of the members of the agency who are to render the final decision have not heard the matter or read the record, the decision, if adverse to a party, shall not be rendered until a proposed final decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the members of the agency who are to render the final decision."

court may retry the case or substitute its own judgment for that of the [administrative agency]. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations omitted; internal quotation marks omitted.) *Board of Education* v. *Freedom of Information Commission*, 208 Conn. 442, 452, 545 A.2d 1064 (1988). Even "[j]udicial review of conclusions of law reached administratively is . . . limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 219 Conn. 51, 57–58, 591 A.2d 1231 (1991). Judicial review is intended to assure that the action is fundamentally fair. *Feinson* v. *Conservation Commission*, 180 Conn. 421, 429, 435 A.2d 980 (1980).

"A reviewing court must defer to the agency's assessment of the credibility of the witnesses and to the agency's right to believe or disbelieve the evidence presented . . . ." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 668, 638 A.2d 6 (1994). "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion

or clearly unwarranted exercise of discretion. . . ." General Statutes § 4-183 (j). In the present case, the trial court did not find any of the six exceptions and, therefore, was bound by the statute to affirm the board's decision.

If the administrative record provides substantial evidence on which the hearing officer could reasonably have based his findings, the decision must be upheld. *Dolgner* v. *Alander*, supra, 237 Conn. 281. The trial court may not disturb the administrative process if the record contains substantial evidence that supports the hearing officer's findings and as long as the board followed the requirements of the statute. The trial court in the present case concluded that "[i]n this case the testimony of the witnesses constitute the required evidence, and . . . the board scrupulously followed the [statutory] procedures."

The plaintiff has not persuaded us that there is any justification for this court to disturb the well reasoned decision of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.

