[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is an appeal taken pursuant to General Statutes, Section 10-151, from a decision of the defendant, The New Haven Board of Education, ("the Board"), terminating the plaintiff's contract of employment.
On March 27, 1997, the plaintiff, Gloria Rodgers, was a tenured teacher in the New Haven school system. The plaintiff had begun service in the system in 1984 and had compiled an unblemished record. At the time of the incident giving rise to her dismissal, she was serving as an assistant principal in the Jackie Robinson Middle School. On March 27th, some twenty two fifth and sixth grade girls were subjected to a search for money alleged to have been stolen.
On March 29, 1997, Dr. Reginald Mayo, Superintendent of Schools, notified the plaintiff that she was suspended with pay pending an investigation of the search incident. By letter dated April 3, 1997, Mayo informed the plaintiff that he intended to ask the defendant Board to terminate the plaintiff's contract of employment. Following a request from the plaintiff, Mayo, by letter dated April 16, 1997 stated the reasons for seeking termination were: a. Inefficiency or incompetence; b. CT Page 2350 Insubordination against reasonable rules of the New Haven Board of Education; c. Other due and sufficient cause. Pursuant to statute, the plaintiff made a written request for hearing and elected that the matter be heard by an impartial hearing panel. Said panel convened on May 8, 1997 and the hearing was concluded on December 3, 1997. (By agreement of the parties, and because of the volume of evidence presented, the hearing was closed and reopened several times during this period).
The panel issued its Findings of Fact and Recommendations on January 27, 1998. The panel majority, one member dissenting, recommended that the plaintiff "be reinstated forthwith and that no discipline whatsoever be imposed upon her". On January 30, 1998 the Board met to consider the panel's Findings of Fact and Recommendation. Following discussion, the Board voted unanimously to accept the Superintendent's recommendation to terminate the plaintiff's contract of employment. Based on this vote, the Board issued its written Final Decision in February 1998. This appeal followed. A hearing on this appeal was held on October 26, 1998, at which both parties appeared and were represented by counsel.
 II
On March 27, 1997, during the fifth period, the plaintiff was at an assembly for seventh and eighth grade students (Finding of Fact #8). While in the auditorium, the plaintiff was notified that she was needed in the gymnasium because a gym teacher, Marie Young, believed there was a serious problem in the gym (FOF #9). Before leaving the auditorium, the plaintiff requested a school security aide, Cassandra Lang, to accompany the plaintiff to the gym (FOF #10). The plaintiff arrived at the gym at approximately 1:00 p. m., just prior to Lang's arrival (FOF #16). On arrival, the plaintiff found Young and some twenty two fifth and sixth grade female students in the gym locker room (FOF #15). Young informed the plaintiff that a student, "D", had reported that $91.00 belonging to the student had been stolen, although it was subsequently established that the amount claimed missing was approximately $40.00 (FOF #17, #35). The plaintiff questioned D and had D open her locker for inspection (FOF #19-20, #22, #23). No money was found in the locker (FOF #21). The plaintiff discussed the alleged theft with the girls and students S and C were named as suspects (FOF #29). The plaintiff told S she would have to be searched because D was still claiming that S had the money (FOF #38). S readily agreed to be searched (FOF#39) and the plaintiff had S turn her pockets out and remove her shoes and CT Page 2351 socks. The plaintiff conducted this search in the locker room, in the presence of Young and Lang (FOF #40). No money was found (FOF #41). After S was searched, the plaintiff checked some of the lockers in the vicinity of D's, then made a general statement to the girls about the consequences of stealing money at school or in the community (FOF #44). The plaintiff told the girls the gym area and the shower area would be checked and then the girls would all be checked. (FOF #45). The plaintiff told Young and Lang to check the girls individually for the missing money (FOF # 49).The plaintiff authorized a search of the students and authorized that the search should be private. The plaintiff never gave Young and Lang specific instructions on how to search the girls, nor did Young or Lang ask the plaintiff any questions on how to proceed (FOF #49). Prior to taking the first girl in to be searched, Marie Young raised her voice and emphatically told the girls' "[a]ll right, line up, if that money is in this gym, we're going to find it, even if it's in your panties, because you could hide it anywhere."(FOF # 56). The girls were searched, one by one, in Young's office adjacent to the locker room. S was the first student searched by Young and Lang in the office. (FOF #62). The search pattern was essentially the same for each girl; her book bag was checked; she was told to remove her shoes and socks; she was then told to lower her pants and then her underpants; then to lift her shirt to expose the bra area.(Romanow FOF #17, #18, #23; Plaintiff's proposed finding of fact #65, Brief, p. 21). The plaintiff never entered the room where the searches were being conducted (FOF #64). She was occupied conducting locker searches in the shower area, and writing out passes for the girls as they emerged from the office after their search(FOF #61, #69). She wrote the passes at a desk located just outside the room where the searches were being conducted(FOF #69). When some of the students came out of the office after being searched, they made comments about what had allegedly happened inside the office (FOF #65). The demeanor of those who had been searched was such as to suggest that something out of the ordinary had happened (FOF #**74). The plaintiff left the area before the last few girls had been searched, without informing Young or Lang that she was leaving(FOF #72). The plaintiff was in charge during the incident from the time of her arrival until the incident concluded (FOF #59).
 III
The gravamen of the Board's Final Decision is: On March 27, 1997 the Board lad in place an established policy regarding CT Page 2352 student searches. The plaintiff was familiar with said policy. The plaintiff, as an assistant principal, was responsible for enforcing Board policy. On March 27th, the plaintiff ordered a teacher and a security aide to conduct a search of some 22 students. The searches, as conducted, were in violation of Board policy. The plaintiff knew or should have known said searches were not proceeding appropriately, but failed to check to see what was going on. The plaintiff was aware on March 27, 1997, that the said searches as conducted violated Board policy. The Board concluded that the plaintiff's actions, and failures to act. "represented inefficiency or incompetence, insubordination against reasonable rules of the Board, and other due and sufficient cause for termination of her contract of employment with the board"
In challenging the defendant's decision, the plaintiff's argument is threefold.
First, the plaintiff asserts that said decision materially prejudiced substantial rights of the plaintiff, in that such decision was (a) in violation of constitutional and statutory provisions; (b) in excess of the statutory authority granted the defendant; (c) made upon unlawful procedures; (d) affected by other error of law; (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, and (f) arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Second, since the impartial hearing panel's findings of fact were supported by substantial evidence, and its conclusions of law were derived from a reasonable application of the law to the facts found, and its disposition of the charges establishing no cause for termination [that] was not arbitrary, capricious or illegal, the New Haven Board of Education had no legal basis for deciding that the charges established cause for terminating the plaintiff's contract.
Third, the New Haven Board of Education acted with gross negligence, or in bad faith or with malice in making its decision.
 IV
In support of her position, the plaintiff argues: CT Page 2353
1. Since the impartial hearing panel found the plaintiff inculpable of the charges, and the Board did not dispute the panel's findings as necessarily contrary to the evidence or that the impartial hearing panel acted illegally, arbitrarily, or capriciously, the Board of Education had no discretion but to reinstate the plaintiff.
2. The Board's decision was made upon unlawful procedure in that"[W]ithout attending any of the hearings, reading any of the transcripts, viewing the demeanor of the witnesses, hearing their testimony and weighing their credibility, studying the extensive exhibits introduced, and reading the copious briefs and reply briefs submitted by the parties, as well as several other briefs tendered during the course of the hearings on pivotal issues, the defendant Board audaciously decided to rely on statements by unnamed persons who did not testify at the hearing, findings of fact by the dissenting panel member (which necessarily conflicted with the majority findings or else they would be part of the majority findings,) and their own individual interpretations, inferences and conclusions from the facts found after discounting the discussion of such facts as nonbinding albeit by the same majority of panel members who found such facts in the first place".
3. The Board not only ignored a significant portion of the impartial hearing panels' findings, but relied on information, apparently emotionally charged, supplied by the parents of children involved in the search at sundry Board of Education meetings, depriving the plaintiff of notice and opportunity to be heard regarding such information.
4. The plaintiff's conduct with reference to the incident at issue did not constitute incompetency, insubordination or other due and sufficient cause.
5. The defendant Board failed to find an essential element of a finding of insubordination, willfulness, a willful disregard of, or refusal to obey, reasonable rules and regulations of the employing board.
6. A finding of other due and sufficient cause must be based on misconduct of a serious nature "similar to that of the reasons that went before it". CT Page 2354
7. There is substantial evidence to support the Impartial Hearing Panel's findings of fact that the plaintiff did not order a strip search, or secretly know that one was being conducted and do nothing about it.
8. There is substantial evidence in the record "to support the impartial hearing panel's findings of fact that the plaintiff acted reasonably under the circumstances, including in consideration of the Administrative Procedures handbook for student searches and the State and Federal constitutions."
9. The [school] Administration set out to malign the plaintiff by comparing (in a Brief to the impartial hearing panel) her conduct "to the impact or harm created by pornographers, child molesters, sexual perverts, and sexual assaulters of children" and further claiming that "what the plaintiff caused to happen to these girls comprised emotional abuse".
For reasons stated below, all of the plaintiff's claims must fail.
 V
In a proceeding, such as this, undertaken to pursue termination of the employment of a tenured teacher, pursuant to General Statutes, Section 10-151, the roles of an impartial hearing panel, a board of education and, if a decision is appealed, a reviewing court, and the relationship of each to the others, is well-settled. A school board, when considering termination of a tenured teacher's employment, acts like an administrative agency, in a quasi-judicial capacity, (quotation marks, citations omitted), Sekor v. Board of Education,240 Conn. 119, 125. A school board has a duty to afford a tenured teacher a fair hearing and to terminate an employment contract only for one or more of six reasons enumerated in the statute, which reasons must be supported by a fair preponderance of the evidence, Catinov. Board of Education, 174 Conn. 414, 417; See General Statutes, Section 10-151 (d). In challenging an administrative agency action, a plaintiff has the burden of proof, Samperi v. InlandWetlands Commission, 226 Conn. 579, 587. The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion, Id. The plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision, Id. CT Page 2355 (citations omitted).
Judicial review of a school board's administrative decision follows established principles of administrative law.. The court's ultimate duty is only to decide whether, in light of the evidence, the board has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically flow from such facts (citations, quotation marks omitted), Sekor v.Board of Education, supra, at 126. Courts have no general equitable jurisdiction to oversee the decisions of school hearing panels and school boards, Id., at 131.
 VI
The court is persuaded that certain of the plaintiff's claims are based on a misapprehension by the plaintiff of the roles of the impartial hearing panel and that of the Board and on a misunderstanding of the relationship between the two bodies.
In this case the defendant Board had the authority and the responsibility to determine whether the plaintiff's contract of employment should be terminated for cause The Board could not properly delegate this authority to any individual or entity. If a teacher files a written request for a hearing, such hearing may be held before the full board; or the board may designate a subcommittee of three or more members, to conduct hearings and submit written findings and recommendations to the board for final disposition; or, at the election of either the board or the teacher, the said hearings may be conducted by an impartial hearing panel or by an impartial hearing officer. Here, the plaintiff elected an impartial hearing panel.
A school board has discretion to accept or reject a recommendation from an impartial hearing panel, though it is bound by the panel's findings of fact unless unsupported by the evidence . . . The board is bound by the panel's findings of fact, but lot by its legal conclusions or by its recommendations (citations, quotation marks omitted), Sekor v. Board ofEducation, supra, at 125. When, as here, a dissenting panel member makes additional findings of fact, the Board is free to adopt a dissenter's finding of fact, when such finding is supported by substantial evidence in the record, Barnett v. BoardCT Page 2356of Education, 232 Conn. 198,207-8, 214.
In the instant matter, the impartial hearing panel duly conducted hearings and submitted written findings and recommendations in a document entitled Findings of Fact/Recommendation. The document, containing 87 pages, is divided into 10 sections. Section 2, entitled "Panel's Findings of Fact", contains 157 findings of fact, to each found by a majority of the impartial hearing panel. The Board properly adopted those 157 findings of fact at its meeting of January 30, 1998, as the facts on which it must base its decision. Section 4 is entitled "Additional Findings of Fact Found by Panel Member Romanow Only". The Board, in its Final Decision, in the section titled "II. Findings of Fact. B. Findings of Facts of John M. Romanow", indicated it relied on Romanow's findings of fact, "particularly findings of fact nos. 11 through 20", as descriptive of the searches at issue. The court finds that there was substantial evidence in the record to support Romanow's findings of fact descriptive of the searches at issue. The court finds that said descriptive findings are not in conflict with any findings by the impartial panel majority. The defendant Board was free to rely on such findings of fact, as well as any facts found by the majority, in reaching its decision. The plaintiffs claim that a dissenter's finding must necessarily conflict with the findings of the majority, "or else they would be part of the majority findings", is simply unfounded.
The Board is bound by the panel majority's findings of fact where supported by the record and is free to adopt other panel members' findings of fact, if same are supported by substantial evidence in the record. The weight to be assigned to a finding, and inferences to be drawn from findings are the province of the Board and of its individual members. Thus, the plaintiff's claim that the Board ignored "significant portions of the impartial hearing panel's findings" is without merit.
The Board is not bound by the contents of any section of the panel document other than Section 2. Thus, the Board was entitled to take into consideration the opinions, inferences, findings or conclusions of law expressed in Section 5, "Discussion of Findings of Chairman Thomas J. Staley", Section 6, `Discussion of Findings by panel member Donald J. Dineen", Section 7, "Discussion and Opinion of Panel Member Romanow",, as well as Section 8, "Panel's Recommendation", Section 9, "Recommendation of Panel Member John M. Romanow, but the Board was not required CT Page 2357 to adopt any such opinions, inferences, findings or conclusions of law.
 VII
The plaintiff, "Second Argument" is:
"Since the impartial hearing panel's findings of fact were supported by substantial evidence, and its conclusions of law were derived from a reasonable application of the law to the facts found, and its disposition of the charges establishing no cause for termination was not arbitrary, capricious or illegal, the New Haven Board of Education had no legal basis for deciding that the charges established cause for terminating the plaintiff's contract".
This argument evidences the aforesaid misapprehension of the roles of the impartial hearing panel and the Board and misapprehension of the relation between the two entities. The plaintiff's interpretation would strip the Board of its discretion.
The Board does not sit as an appellate body, required to adopt a panel's recommendation so long as the panel's findings of fact are supported by substantial evidence in the record and its conclusions of law derived from a reasonable application of the law to the facts found. There is no stricture on the Board, barring it from "substituting its judgment" for that of the panel; quite to the contrary, the Board is required to exercise its judgment and make a decision based on the facts found which are supported by the record. The substantial evidence rule "is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding being supported by substantial evidence" (citations, internal quotation marks, omitted), Barnett v. Board of Education, 232 Conn. 198, 211, 212. CT Page 2358 The Board was under no obligation to adopt the panel's conclusions of law; see, eg., Barnett v. Board of Education, supra, at 210: "Because finding number eleven of the majority of the arbitrators was a conclusion of law rather than a finding of fact, the board was not bound by it."
The court's task is not to determine if the panel majority's conclusions of law were derived from a reasonable application of the law to the facts found nor to determine whether there is substantial evidence in the record to support the panel majority's conclusions or recommendations, but rather, to determine if there was substantial evidence in the record to support the Board's decision. This was not a case "[w]here there is but a single course of action which an agency can legally take", Catino v. Board of Education, 174 Conn. 414, 418.
 VIII
The plaintiff describes the process followed by the Board in arriving at its decision as an "unlawful procedural nightmare", with examples offered such as the Board relying on findings of fact by the dissenting panel member, the failure by Board members to attend the hearings of the impartial hearing panel, the refusal of the Board to be bound by Section 5, Discussion of Findings and reliance by individual Board members on "their own individual interpretations, inferences and conclusions from the facts found".
The plaintiff cites no statute or judicial decision, requiring the Board to attend said hearings, adopt Section 5 of the panel document, refrain from relying on a dissenting members's finding of facts, or precluding individual members of the Board from relying on their own individual interpretations, inferences and conclusions. See, eg., Joyell v. Commissioner,45 Conn. App. 476, 488: "Such certification [that board members of the State Board of Education had read the plaintiff's exceptions and briefs] is not required by either the statute or the regulation",
In her Memorandum of Law, the plaintiff claims, that the Board "audaciously decided to rely on statements by unnamed persons who did not testify at the hearing" Later, in the same Memorandum, the plaintiff claims the Board "relied on information, apparently emotionally charged, supplied by the parents of children involved in the search at sundry Board of CT Page 2359 Education meetings". This is in apparent reference to an exchange between board counsel and one member (DeStefano) and comments made by that board member, including "there is nothing that he read in the statements of fact that contradicted what those parents came here and talked about how they felt their children were violated and abused and what it meant to them as families". Such comment by a board member does not require the conclusion that that member based his vote on ex parte information and the plaintiff has failed to establish that such was the case. The comments at issue may be fairly read as stating that the impartial panel's findings did not contradict statements that some parents concerned made in another forum. In our courts, a trier is not required to come to his task totally ignorant of the case he is to decide; rather, the trier is required to base his decision on the record, whatever he might have read or heard concerning the case. So here. The comments at issue merely reflect the fact that members of local boards of education are members of a community who may be expected to be among the first to hear of any controversy that may arise, particularly with reference to local schools, with its attendant claims, counterclaims, allegations and accusations.
Moreover, there is nothing in the record to suggest that such comment had any influence on any other Board member. The plaintiff has failed to establish, by a fair preponderance of the evidence, her claim that the decision to terminate her contract of employment was based on ex parte discussions with the Board.
 IX
The plaintiff asserts that her conduct with reference to the incident at issue did not provide grounds for termination of her contract of employment.
It is undisputed that the plaintiff, on arrival at the locker room, took charge of the investigation; that she ordered Young and Lang to search each of the twenty two girls individually in Young's office; that there was in place on the date in question a board policy and regulations governing student searches; that the plaintiff was familiar with said policy and regulations; that the plaintiff gave no instructions to Young and Lang regarding the scope of the searches to be conducted or the methods to be used; that the plaintiff made no effort to observe the searches conducted by Young and Lang to ensure the searches conformed to board policy; that the searches themselves were in violation of CT Page 2360 board policy and regulations.
The plaintiff argues that she was entitled to assume that Young and Lang were familiar with board policy and to assume that they would conduct the searches in accordance with said policy. The court finds there was substantial evidence in the record to allow the board to conclude that the search of the 22 students, ordered by the plaintiff, was an extraordinary event and a serious matter, requiring close supervision by the person in charge, that the plaintiff, in ordering said searches, necessarily assumed responsibility to ensure that such searches were performed in conformity with board policy, and that the plaintiff, in failing to supervise said searches, failed to exercise sound professional judgment so as to ensure the safety and welfare of the students concerned and to enforce Board policy.
The plaintiff claims she was justified in ordering the said searches because the incident of alleged theft threatened immediate harm to students, staff or school property in that any disputes arising regarding the missing money could give rise to fights among students and such disputes could "spill over" into the community. It is a truism that any incident, however trivial, can escalate into a dangerous or destructive conflict. But seeDesroches v. Caprio, Civil Action 2:97cv460, United States District Court For the Eastern District of Virginia, Norfolk Division (1997), cited by the plaintiff: "A search of all nineteen students in the class, especially when it is not certain that one of them is guilty, casts too wide a net when the evil combated is petty larceny of an object that could not harm others". Assuming the situation facing the plaintiff warranted a search of the 22 girls, this in no way alters the fact that the searches carried out on the plaintiff's order were in violation of Board policy.
The Board in its Final Decision concluded that the plaintiff "knew or should have known that the searches were not proceeding appropriately and should have checked to see what was going on."
The plaintiff adamantly denied she knew the searches in question were proceeding inappropriately. However, the Board was entitled to rely on Finding of Fact **74, which states, in pertinent pant, "Gloria Rogers knew or should have known from the demeanor of the students and the claims made by the students searched in reference to the searches that something was amiss CT Page 2361 and that she should have immediately checked to see what was going on in the office where the children were being searched".
Prior to the commencement of the searches conducted in Young's office, the plaintiff conducted a search of a student, S, in the locker room, in the presence of Young, Lang and the other students, S had been identified by the victim as a suspect. The search by the plaintiff consisted of having S pull out her pockets and to check her shoes and socks. The plaintiff asserts that in so doing, she defined the scope of a permissible search for Young and Lang. The Board was entitled to take into consideration that. after S was searched by the plaintiff, she was the first student to be searched by Young and Lang (FOF 62), in violation of Board policy. Clearly, any effort by the plaintiff to delineate the scope of the searches ordered was inadequate to ensure that the searches ordered were done in conformity with Board policy.
The plaintiff argues that any fault in the incident in question is the Board's, in that the Board policy on student searches was confusing and poorly written and that the defendant failed adequately to train the plaintiff regarding student searches. But the plaintiff admitted that she was familiar with said policy, understood it, recognized that searches such as occurred here were in violation of said policy and asserted she would have intervened to stop such searches, had she been aware of their scope. It is not the plaintiff's understanding of the board policy on student searches that is at issue, but her failure to supervise the searches she ordered. The court finds that there was substantial evidence in the record to support the conclusion by the Board that the plaintiff knew or should have known that the searches at issue were not proceeding appropriately and should have checked to see what was going on.
 X
The defendant Board found that the plaintiff's conduct constituted incompetence and inefficiency, insubordination against reasonable rules of the Board and other due and sufficient cause justifying termination of the plaintiff's contract of employment. The plaintiff challenges each of these grounds.
The plaintiff notes that prior to the incident in question she had served for many years with an unblemished record. She CT Page 2362 argues that incompetence is found generally as based upon a pattern of conduct rather than a single incident, and isolated defaults of a transitory or insubstantial nature have been held insufficient to support discharge. However, a single act can be the basis of a finding of incompetence. See, eg., Redcay v. StateBoard of Education, 130 .N.J.L. 369, 33 A.2d 120 (1943), cited by both parties:
"Unfitness for a position under the school system is best evidenced by a series of incidents. Unfitness to hold a post might be shown by one incident, if sufficiently flagrant, but it might be shown by many incidents." Id., at 122."
The decision to conduct a search of 22 students was a serious matter, demanding the exercise of professional judgment and a strict adherence to board policy regarding student searches. The court finds there is substantial evidence in the record to support the board's conclusion that the plaintiff's conduct in ordering and directing the searches at issue constituted a failure in professional judgment such as to support a finding of incompetence and other due and sufficient cause.
Other due and sufficient cause includes "any ground which is put forward by the [school] committee in good faith and which is not arbitrary, irrational, unreasonable or irrelevant to the committee's task of building up and maintaining an efficient school system", Tucker v. Board of Education, 177 Conn. 572, 577
(citations, quotation marks omitted). A decision to terminate must be reached after a careful examination of all pertinent factors relating to the particular situation, with due consideration of the effect the teacher's conduct will have on the school authorities as well as the students, Id., at 580. "Thus, in deciding whether particular conduct constitutes `due and sufficient cause' for termination, the impact of that conduct upon the operation of the school is a significant consideration",Rado v. Board of Education, 216 Conn. 541, 554.. The court finds that there was substantial evidence in the record to support the conclusion of the Board that the plaintiff's conduct constituted other due and sufficient cause for termination of her contract of employment.
The plaintiff asserts, that assuming, arguendo, her performance was deficient, the defendant Board, rather than pursuing termination, should have undertaken remediation efforts, such as counseling or training and provided a reasonable CT Page 2363 opportunity for the plaintiff to correct any deficiency. In view of the serious nature of the plaintiff's failure to enforce board policy, and the repercussions of such failure on students and school, the Board had a basis to conclude that the plaintiff's performance was not remediable.
The Board, having substantial evidence in the record to support its finding of incompetence and other due and sufficient cause for termination, had the authority and the discretion to terminate the plaintiffs contract of employment or to impose a lesser sanction, including remediation measures. The plaintiff has failed to establish, by a fair preponderance of the evidence, that the Board's action in terminating her contract of employment, was arbitrary, conscience-shocking or oppressive in a constitutional sense, so as to deprive the plaintiff of her right to substantive due process, Lawrence v. Achtyl, 20 F.3d 529, 537
(1994) (citations omitted). That being the case, the court will not substitute its judgment for that of the Board, as to the sanction appropriate to the violation., Joyell v. Commissioner ofEducation, supra, at 489 (citations, quotation marks omitted). "[T]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions",Bishop v. Wood, 426 U.S. 341, 350, 96 S.Ct. 2074,48 L.Ed.2d 684, (1976); Sekor v. Board of Education, supra, at 129..
The plaintiff argues that the claim of insubordination against reasonable rules of the Board must fail as the evidence does not show a willful refusal on her part to obey such rules. The court is not persuaded that the plaintiff's conduct during the incident in question demonstrated a conscious disregard of the rules of the board regarding student searches. The court finds that the plaintiff has established, by a fair preponderance of the evidence, that the plaintiff's conduct did not constitute insubordination.
 XI
The plaintiff's Third Argument, "The New Haven Board of Education acted with gross negligence, or in bad faith, or with malice in making its decision", need not long detain us. The plaintiff alleges that the defendant portrayed the plaintiff as "a sex offender, a criminal, and a perjurer". The plaintiff cites nothing in the record to support this allegation. The plaintiff alleges that the defendant "set out to malign the plaintiff by comparing her conduct "to the impact or harm created by CT Page 2364 pornographers, child molesters, sexual perverts, and sexual assaulters of children" in a brief submitted to the impartial hearing panel. This is in apparent reference to the fact situations pertaining in various cases cited by the defendant in support of its legal position. The court finds this claim singularly unpersuasive. Further, such brief is not part of the record in this appeal, (excerpts, apparently from a brief submitted by the Administration to the panel, were attached to the plaintiff's trial brief). The plaintiff alleges that in the same brief. reference was made that "what Rogers caused to happen to these girls comprised emotional abuse". Additionally, the plaintiff claims the defendant "tried to obstruct the impartial hearing panel's inquiry by having Captain Grady present approximately only three (3) percent of the relevant data involving violent incidences (sic) at Jackie Robinson School and "by Mr. Pugliesi submitting data which understated the incidences (sic) of fighting and physical disturbances at Jackie Robinson School not once but three (3) times".A review of relevant testimony at the panel hearings finds no support for this claim of obstruction. The court finds that the plaintiff has failed to establish, by a fair preponderance of the evidence, that in terminating the plaintiff's contract of employment the defendant Board acted with gross negligence, or in bad faith or with malice. The plaintiff's claims in this regard are without foundation.
 XII
The plaintiff has failed to establish, by a fair preponderance of the evidence, that the decision of the defendant Board, terminating her contract of employment, was made in violation of constitutional or statutory provisions; in excess of the statutory authority of the Board; made upon unlawful procedure; affected by other error of law; clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Accordingly, the relief requested is denied and the plaintiff's appeal is dismissed.
Judgment may enter in favor of the defendant, the New Haven Board of Education. CT Page 2365
By the Court,
Downey, J.