REUBEN T. SPITZ *v.* BOARD OF EXAMINERS
OF PSYCHOLOGISTS
(AC 31846)

Robinson, Alvord and Schaller, Js.

Argued December 6, 2010—officially released March 8, 2011

*Jeffrey J. Mirman,* for the appellant (plaintiff).

*Kerry Anne Colson,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* former attorney general, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Reuben T. Spitz, appeals from the judgment of the trial court dismissing his administrative appeal from the decision of the defendant, the board of examiners of psychologists (board). The board suspended the plaintiff's license for two years, with such suspension immediately stayed, and placed him on probation for conduct in violation of the

applicable standard of care, codified in § 10.08[1] of the American Psychological Association (APA) ethical code.[2] On appeal, the plaintiff claims that the court committed reversible error in (1) concluding that he was provided with adequate notice of the charges, (2) determining that he failed to prove bias against him, (3) upholding the final decision of the board notwithstanding that the board violated the Freedom of Information Act (FOIA), General Statutes § 1-200 et seq., and (4) concluding that the board's decision was supported by substantial evidence. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On September 27, 2007, the department of public health (department) filed a statement of charges (charges) with the board against the plaintiff,

---

[1] Section 10.08 of the Ethical Principles of Psychologists and Code of Conduct provides in relevant part: "Sexual Intimacies with Former Therapy Clients/Patients: (a) Psychologists do not engage in sexual intimacies with former clients/patients for at least two years after cessation or termination of therapy."

[2] The board acted pursuant to the authority vested in it by General Statutes §§ 19a-17 and 20-192.

Section 19a-17 (a) provides in relevant part: "Each board or commission [such as the board of examiners of psychologists] . . . may take any of the following actions, singly or in combination, based on conduct that occurred prior or subsequent to the issuance of a permit or a license upon finding the existence of good cause . . . (2) Suspend a practitioner's license or permit . . . (5) Place a practitioner or permittee on probationary status and require the practitioner or permittee to: (A) Report regularly to such board, commission or department upon the matters which are the basis of probation; (B) Limit practice to those areas prescribed by such board, commission or department; (C) Continue or renew professional education until a satisfactory degree of skill has been attained in those areas which are the basis for the probation . . . ."

Section 20-192 provides in relevant part: "The board may take any action set forth in section 19a-17, if the license holder . . . [is found] to have acted negligently, incompetently or wrongfully in the conduct of his profession . . . . Notice of any contemplated action under said section, of the cause therefor and the date of hearing thereon shall be given and an opportunity for hearing afforded . . . ."

a practicing psychologist. The charges consisted of five counts that alleged a number of instances in which the plaintiff had " 'acted negligently, incompetently or wrongfully in the conduct of his profession' " and stated that such actions "constitute[d] grounds for disciplinary action pursuant to [General Statutes] § 20-192 . . . ." The factual basis for each of the five counts may be summarized as follows: (1) the plaintiff treated a male patient, R.B.,[3] and the plaintiff began a personal and sexual relationship with R.B.'s wife, L.B., within one year of ceasing R.B.'s treatment; (2) the plaintiff also treated L.B., and the plaintiff began a personal and sexual relationship with her within one year of ceasing her treatment; (3) the plaintiff provided L.B. with Xanax and/or amphetamines; (4) the plaintiff conveyed confidential information about at least three of his other patients to L.B.;[4] and (5) the plaintiff treated E.B., L.B.'s minor son, and began a personal and sexual relationship with L.B. within one year of ceasing E.B.'s treatment.

On October 12, 2007, the department served a notice of hearing and charges on the plaintiff by certified mail. The plaintiff filed an answer, special defenses and a motion for a more definite statement of charges pursuant to General Statutes § 4-177,[5] which was denied. The

[3] During the administrative hearing, the chairperson of the defendant decided that it was reasonable to refer to the witnesses only by initials to protect their identities while their mental health records were discussed in the public forum, with media and video coverage. As the presiding officer, the chairperson, pursuant to § 19a-9-25 of the Regulations of Connecticut State Agencies, may set the procedures and make such rulings in the underlying proceeding before the board. In accordance with that ruling, the names of the witnesses involved in this appeal are not disclosed.

[4] The department withdrew this allegation during the administrative hearing held on February 1, 2008.

[5] General Statutes § 4-177 provides in relevant part: "(a) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice. (b) The notice shall be in writing and shall include: (1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations involved; and (4) a short and plain statement of the matters asserted. If the agency or party is unable to state the matters in detail at the time the notice is

board also denied the department's motion for summary suspension of the plaintiff's license in accordance with General Statutes §§ 19a-17 (c)[6] and 4-182 (c).[7]

Administrative hearings to adjudicate the charges were held on November 28, 2007,[8] and February 1 and April 18, 2008. The board members present at those hearings consisted of three psychologists and one layperson. The department presented three witnesses: R.B., L.B. and an investigator with the practitioner investigations unit of the department, who had produced an investigative report for the department. The plaintiff was represented by counsel and given the

---

served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished. . . ."

[6] General Statutes § 19a-17 (c) provides: "Such board or commission or the department where appropriate may summarily suspend a practitioner's license or permit in advance of a final adjudication or during the appeals process if such board or commission or the department finds that a practitioner or permittee represents a clear and immediate danger to the public health and safety if he is allowed to continue to practice."

[7] General Statutes § 4-182 (c) provides in relevant part: "If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. . . ."

[8] On November 28, 2007, at the close of the hearing, upon motion of a board member, the remainder of the meeting was held in executive session, closed to the public. The plaintiff's counsel did not object to the motion.

The plaintiff subsequently complained to the freedom of information commission (commission) that the board violated the FOIA by convening in executive session and requested that (1) the commission declare the board's proceedings null and void and that such proceedings be terminated, (2) the board be required to attend a FOIA workshop and (3) the board be ordered to disclose the content of the communications during the improper executive session. The commission found, inter alia, that the board was in violation for failure to state the reasons for the executive session and that none of the exceptions to the requirement of stating on the record the reasons for the session applied.

Despite these findings, the commission declined to declare null and void the proceedings and instead ordered, inter alia, that the board amend the minutes of the November 28, 2007 meeting to include the purpose of the executive session and to reconstruct the substantive discussion held during the executive session.

opportunity to respond to the charges, to cross-examine the board's witnesses, to present evidence, to testify and to argue each of the factual issues involved in the case. The plaintiff did not deny having a personal and sexual relationship with L.B., or treating R.B. and E.B., but rather disputed whether L.B. was ever a patient of his or if he had a psychologist-patient relationship with her.

The board concluded that the department had sustained its burden of proof by a preponderance of the evidence as to counts two and five. With regard to count two, the board found that the plaintiff had breached the "applicable standard of care, codified in § 10.08 of the APA ethics code, [which] prohibits a psychologist from engaging in sexual intimacies with former clients/patients for at least two years after termination of therapy." The board stated that, with respect to count two, "on the basis of its specialized professional knowledge . . . because L.B. was present in the [plaintiff's] office in his home during a therapy session, a psychologist-patient relationship existed . . . . Additionally, L.B. testified that she received treatment from the [plaintiff]." With regard to count five, the board found that "[r]elying on its specialized professional knowledge, the board concludes that in the practice of psychology, when a minor is treated, the parent is part of the treatment. This conclusion reflects a recognized principle within the practice of psychology. . . . Therefore, a psychologist-patient relationship between the [plaintiff] and L.B. existed. . . . Thus, [the plaintiff's] conduct in having a sexual relationship with L.B. less than two years after the termination of that psychologist-patient relationship violated the applicable standard of care, as codified in § 10.08 of the APA ethics code." (Citation omitted.)

Based on its findings, the board suspended the plaintiff's license for two years, stayed immediately, subject

to the plaintiff's compliance with the terms and conditions of probation for two years. The terms required that, inter alia, the plaintiff undergo regularly scheduled therapy, his practice be supervised at all times by a licensed psychologist, he inform the department of any address changes and he cover any costs associated with these requirements.

The plaintiff appealed from the board's decision to the trial court pursuant to General Statutes § 4-183,[9] claiming, inter alia, that (1) he was not provided with adequate notice of the charges, (2) two of the board members were biased, (3) the board violated the FOIA and (4) the board's decision was not supported by substantial evidence. After reviewing the record and the parties' briefs and hearing oral argument, the court dismissed the plaintiff's appeal. The court found that (1) the plaintiff had adequate notice and the board's reliance on its own expertise in making certain findings was a proper function of the board, (2) the plaintiff failed to meet his burden of establishing actual bias with respect to either board member, (3) the freedom of information commission (commission) had the authority to remedy a violation and the court would not provide the plaintiff with a result he could not obtain from the commission, and (4) there was substantial evidence to support the board's findings. The plaintiff appealed to this court. Additional facts will be set forth as necessary.

First, we set forth the applicable standard of review. "We review the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the [Uniform Administrative Procedure Act (UAPA),

[9] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal. . . ."

General Statutes § 4-166 et seq.] . . . . Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . [Constrained by a narrow scope of review] [n]either this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of facts. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j) (5) and (6).[10] An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed

---

[10] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Internal quotation marks omitted.) *Towbin* v. *Board of Examiners of Psychologists*, 71 Conn. App. 153, 162–63, 801 A.2d 851, cert. denied, 262 Conn. 908, 810 A.2d 277 (2002).

The present appeal is from the decision of the trial court. We review that decision only to determine whether it was rendered in accordance with the UAPA. See id., 163.

"[A]s to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *Cannata* v. *Dept. of Environmental Protection*, 239 Conn. 124, 139–40, 680 A.2d 1329 (1996).

I

The plaintiff's first claim is that the trial court committed reversible error in concluding that the plaintiff was provided with adequate notice of the charges.[11] Specifically, he argues that notice was inadequate because he

---

[11] The plaintiff's insufficient notice claim focuses on the adequacy of the statement of charges and the notice of the administrative hearing. The plaintiff cites § 4-182 (c) in his brief. Pursuant to the plain language of § 4-182 (c) and our Supreme Court's decision in *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, 270 Conn. 778, 855 A.2d 174 (2004), notice of the formal revocation hearings, *after* institution of the agency proceedings, must comply with § 4-177, not § 4-182 (c). Thus, we review this claim under § 4-177.

was not informed of which specific acts amounted to "negligence, incompetence or wrongful conduct" as alleged in the charges and because the final decision relied on "specialized professional knowledge" or "recognized principles"[12] that were not mentioned in the charges or during the hearing. He contends that he was not provided notice that (1) L.B.'s attendance at one session at which her husband was being treated would constitute the development of a psychologist-patient relationship between L.B. and the plaintiff, and (2) his treatment of the minor, E.B., could be considered treatment of the minor's mother, L.B. The trial court found, inter alia, that the charges put the plaintiff on notice that the board would be asked to consider the appropriateness of his conduct in engaging in a sexual relationship with a former patient, who was also the wife and mother of two of his former patients, and that there was no variance between the allegations of the department and the conclusions reached by the board. We agree.

"[D]ue process [in the administrative hearing context] requires that the notice given must . . . fairly indicate the legal theory under which such facts are claimed to constitute a violation of the law. . . . [T]he fundamental reason for the requirement of notice is to advise all affected parties of their opportunity to be heard and to be apprised of the relief sought. . . . [N]otice of a hearing is not required to contain an accurate forecast of the precise action which will be taken

---

[12] We agree with the court's finding that it was the proper function of the board to apply its specialized knowledge under the facts of this case. See General Statutes § 4-178 (providing in relevant part that "the agency's experience, technical competence, and specialized knowledge may be used in the evaluation of the evidence"); see also *Pet v. Dept. of Health Services*, 228 Conn. 651, 667, 638 A.2d 6 (1994) ("The trial court correctly held that the board had not abused its discretion with regard to the standard of professional care employed . . . . It was not improper for the board to utilize its own expertise in reaching its conclusions regarding . . . professional conduct.").

on the subject matter referred to in the notice. It is adequate if it fairly and sufficiently apprises those who may be affected of the nature and character of the action proposed, so as to make possible intelligent preparation for participation in the hearing . . . .

"Due process in the administrative context is prescribed by the UAPA. General Statutes § 4-177 (b) requires that notice of a contested hearing include the following: (1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations involved; and (4) a short and plain statement of the matters asserted." (Citations omitted; internal quotation marks omitted.) *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 823–24, 955 A.2d 15 (2008).

The following additional facts are relevant to our resolution of the plaintiff's claim. Prior to the administrative hearing, in addition to being served with the charges, the plaintiff was provided with a detailed investigative report prepared by the department's practitioner licensing and investigations section that summarized the conduct that formed the basis of the charges and the allegations of the parties and set forth the applicable sections of the APA ethical code. Appended to the report were a number of exhibits, including (1) L.B.'s and R.B.'s civil complaints against the plaintiff containing the same allegations as those in the present case; (2) the expert opinions supporting the claims made in the civil complaints, in which the experts, inter alia, specifically alleged violations of a number of APA ethical rules, including § 10.08, which rule the plaintiff was ultimately found to have violated; (3) a sworn statement from L.B. stating that she was a former patient of the plaintiff; (4) numerous e-mails

between the plaintiff and L.B. substantiating the personal and sexual relationship; (5) a letter from the plaintiff's attorney responding to the allegations; and (6) a May 6, 2007 letter from Donna H. DiCello, a psychologist, opining that the plaintiff's conduct raised a number of serious ethical violations and stating that "[i]t would be expected that a psychologist would not commence a sexual relationship with a patient (APA Ethics Section 10.05), nor a former patient (APA Ethics Section 10.08) for at least two years after termination of therapy . . . ."[13]

As an initial matter, we reject in its entirety the plaintiff's claim that he was never provided notice that a single meeting that L.B. attended could be the basis of the finding that he and L.B had a psychologist-patient relationship. This was not the basis of the board's finding. The board *did not* rest its finding solely on a single meeting but also credited L.B.'s testimony that she regularly received treatment from the plaintiff. Credibility of witnesses is a matter within the province of the administrative agency. See *Prioleau* v. *Commission on Human Rights & Opportunities*, 116 Conn. App. 776, 787, 977 A.2d 267 (2009). The charges alleged in count two that L.B. was a former patient,[14] and, therefore, the plaintiff cannot sustain a claim of inadequate notice as to the board's conclusion based on that allegation.

---

[13] Not only did the plaintiff have access to DiCello's summary, he also called her as a witness, examined her and inquired as to the violations about which she opined.

[14] Count two of the statement of charges provides in relevant part:

"7. In about September 2003, [the plaintiff] began treatment with RB's wife, LB. [The plaintiff's] treatment of LB ended in about May 2004.

"8. In about September 2004 [the plaintiff] began a personal relationship with RB's wife, LB. The personal relationship between [the plaintiff] and LB became a sexual relationship in about February 2005. The sexual relationship between [the plaintiff] and LB ended in about May 2006.

"9. The above described facts constitute grounds for disciplinary action pursuant to the General Statutes of Connecticut, § 20-192, specifically [the plaintiff] '. . . acted negligently, incompetently or wrongfully in the course of his profession . . . .' "

The plaintiff also was given satisfactory notice of wrongful conduct resulting from his treatment of E.B. in conjunction with his treatment of L.B. In count five, the charges specifically alleged that wrongful conduct occurred as a result of the plaintiff's treatment of E.B.[15] In the charges, the department's investigative report and the attached exhibits, the plaintiff was apprised of the possibility of ethical issues arising from the psychological care of E.B.

The purpose of administrative notice requirements is to allow parties to prepare intelligently for the hearing. *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, supra, 288 Conn. 823–24; see also *Fleischman* v. *Board of Examiners in Podiatry*, 22 Conn. App. 181, 191, 576 A.2d 1302 (1990) (stating that "[t]he test of whether one is given adequate notice is whether it apprises him of the claims to be defended against, and on the basis of the notice given, whether [the] plaintiff could anticipate the possible effects of the proceeding" [internal quotation marks omitted]). Here, the charges specifically alleged violations of § 20-192 and included a description of the facts supporting those violations.[16] The investigative report supplemented those factual

[15] Count five of the statement of charges provides in relevant part:

"18. In about October 2003 [the plaintiff] began treatment with RB and LB's minor son, EB. [The plaintiff's] treatment of EB ended in about June 2004.

"19. In about September 2004 [the plaintiff] began a personal relationship with RB's wife, LB. The personal relationship between [the plaintiff] and LB became a sexual relationship in about February 2005. The sexual relationship between [the plaintiff] and LB ended in about May 2006.

"20. The above described facts constitute grounds for disciplinary action pursuant to the General Statutes of Connecticut, § 20-192, specifically [the plaintiff] '. . . acted negligently, incompetently or wrongfully in the course of his profession . . . .' "

[16] In fact, this court previously has concluded that a plaintiff received adequate notice pursuant to § 4-177 (b) where notification of charges cited only the relevant *chapter* of the General Statutes and generally referenced issues to be considered because the plaintiff was not misled as to the nature of the hearing. See *Rivera* v. *Liquor Control Commission*, 53 Conn. App. 165, 173, 728 A.2d 1153 (1999).

allegations underlying the charges. Accordingly, we conclude that the plaintiff was accorded his due process rights with respect to the adequacy of notice.

## II

The plaintiff next claims that the trial court committed reversible error in concluding that he failed to establish that two of the board members were biased. Specifically, he contends that the chairperson of the board (chairperson), a licensed psychologist, demonstrated bias by (1) allowing the witnesses to be referred to by their initials without according the plaintiff the same protection and (2) asking L.B. leading questions during cross-examination. In addition, he claims that the layperson member of the board (board member) demonstrated bias by requesting that the board go into executive session, in which the board member solicited clarification from legal counsel as to whether the board could at that time institute summary suspension. See footnote 8 of this opinion. We conclude that the plaintiff failed to show actual bias on the part of either the chairperson or the board member.

The following additional facts are relevant to our resolution of this claim. On January 31, 2008, before the second hearing, the plaintiff moved to disqualify the chairperson. The plaintiff claimed bias as a result of the chairperson's decision to refer to the witnesses only by their initials and his "interruption" of the plaintiff's cross-examination of L.B. Subsequently, the plaintiff also moved to disqualify the board member, claiming bias as a result of the board member's motion to go into executive session to inquire from the board's counsel whether the board could initiate summary process proceedings. The board denied both motions to disqualify.

"The applicable due process standards for disqualification of administrative adjudicators do not rise to the heights of those prescribed for judicial disqualification.

. . . The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator. . . . Moreover, there is a presumption that administrative board members acting in an adjudicative capacity are not biased. . . . To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than mere potential bias, of the board members challenged, unless the circumstances indicate a probability of such bias too high to be constitutionally tolerable. . . . The plaintiff has the burden of establishing a disqualifying interest." (Internal quotation marks omitted.) *Moraski* v. *Connecticut Board of Examiners of Embalmers & Funeral Directors*, 291 Conn. 242, 262, 967 A.2d 1199 (2009).

We cannot conclude, upon a review of the record, that the board and trial court were incorrect in holding that the plaintiff had presented insufficient evidence to meet his burden.

### III

The plaintiff's next claim is that the trial court committed reversible error in upholding the final decision of the board notwithstanding a violation of the FOIA.[17] The trial court declined to provide the plaintiff with a remedy that he was unable to obtain from the commission. We agree with the court.

In the present case, the plaintiff previously availed himself of the statutory process under General Statutes § 1-206 (b), which provides the exclusive remedy for the violation of a right conferred by the FOIA. *Pane* v. *Danbury*, 267 Conn. 669, 680, 841 A.2d 684 (2004),

---

[17] We acknowledge the plaintiff's explanation that he is not, in fact, alleging an action pursuant to the FOIA but, rather, alleging a violation of the UAPA procedural requirements arising from the violation of the FOIA. This argument is unavailing under the facts of this case. If for some reason he was dissatisfied with the relief provided by the commission (i.e., reconstruction of the record), the plaintiff could have appealed from the commission's decision to the Superior Court under General Statutes § 1-206 (d).

overruled in part on other grounds by *Grady* v. *Somers*, 294 Conn. 324, 349, 984 A.2d 684 (2009). The plaintiff prevailed and was provided relief for the FOIA violation.[18] He had the ability to appeal from the commission's decision pursuant to § 1-206 (d),[19] were he dissatisfied with the relief provided. Accordingly, we will not disturb what the commission deemed to be the proper remedy for the board's violation of the FOIA.

## IV

The plaintiff's final claim is that the court improperly dismissed his appeal upon concluding that the board's decision was supported by substantial evidence. The plaintiff's claim fails because there is substantial evidence in the record to support the board's conclusion that he engaged in a sexual relationship with L.B. in violation of the APA ethical code.

"The substantial evidence standard is satisfied if the record provides a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . In determining whether an administrative finding is supported by substantial evidence, the reviewing court must defer to the agency's assessment of the credibility of witnesses. . . . The reviewing court must take into account contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Citations omitted; internal quotation

[18] The commission found a violation of the FOIA, and despite this finding, the commission declined to declare null and void the proceedings and instead ordered, inter alia, that the board amend the minutes of the November 28, 2007 meeting to include the purpose of the executive session and to reconstruct the substantive discussion held during the executive session.

[19] General Statutes § 1-206 (d) provides in relevant part: "Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183. . . ."

marks omitted.) *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 668, 638 A.2d 6 (1994).

On the basis of our review of the record, we conclude that the court properly declined to set aside the board's conclusion that L.B. was a patient of the plaintiff. The board's conclusion is supported by substantial evidence and the board's assessment of the more credible of the conflicting testimony. Specifically, the court noted that "L.B. and R.B. both testified that they attended joint marriage counseling sessions with the [plaintiff]. . . . In addition, as noted by the board in its decision, there was evidence, including testimony from L.B., that she received treatment from the [plaintiff] beyond those sessions she attended with her husband and son." (Citation omitted.) Furthermore, the court found that "[w]hile the [plaintiff] denied treating L.B., he admitted to treating R.B. and E.B. and to engaging in a sexual relationship with L.B. [The plaintiff] also admitted that L.B. was present during two sessions with R.B." (Citation omitted.) The trial court acknowledged but dismissed the absence of medical records for the treatment of L.B. because the evidence showed that the plaintiff "was concerned about other clinicians learning of his contact with L.B. outside [of] treatment sessions" and therefore had motivation to omit her treatment from his records. We cannot conclude on the basis of this record that the trial court's determination that substantial evidence existed to support the board's findings and conclusions was improper.

The judgment is affirmed.

In this opinion the other judges concurred.