## THOMAS DESTEPH *v.* DEPARTMENT OF BANKING*

Superior Court, Judicial District of New Britain
File No. CV-10-5015042-S

* Affirmed. *DeSteph* v. *Dept. of Banking*, 141 Conn. App. 834, 62 A.3d 634 (2013).

Memorandum filed February 29, 2012

*Proceedings*

*Thomas F. DeSteph*, pro se, the plaintiff.

*Patrick T. Ring*, assistant attorney general, for the defendant.

COHN, J. The plaintiff, Thomas DeSteph, appeals[1] from a June 4, 2010 final decision of the defendant Howard F. Pitkin, commissioner of banking/department of banking (the commissioner or the department). The final decision made permanent a prior cease and desist order issued to the plaintiff relating to sale of securities

_____

[1] The plaintiff is aggrieved by the imposition of the relief in the final decision. General Statutes § 4-183 (a).

The entity TDA Advantage Trust was also named a respondent by the department, but it has not appealed. The orders imposed against TDA were identical to those against the plaintiff.

in violation of the Connecticut Uniform Securities Act (CUSA), General Statutes § 36b-2 et seq., and regulations promulgated thereunder, and imposed a fine of $30,000 for three violations of the act.

The plaintiff was notified on April 8, 2009, and again on July 16, 2009, that he was alleged by the department to have committed three violations of CUSA and that he had a right to a hearing on these charges. The hearing was held on September 21, 2009, before a department hearing officer who subsequently issued a proposed decision. On June 4, 2010, the commissioner of the department adopted the hearing officer's proposed final decision. The final decision (Return of Record, ROR, pp. 501–503) makes the following relevant findings:

51. DeSteph is an individual whose address is 1 Dustin Lane, Jaffrey, New Hampshire 03452.

52. For all relevant periods, DeSteph owned and managed TDA, as well as The DeSteph Agency, an insurance and financial planner which claims that it uses innovative financial and insurance solutions that have pleased the most discerning clients and claims to be proficient in arranging or brokering such investments as tax-deferred annuities, individual retirement accounts, long-term care insurance policies, life insurance and group benefits.

53. Prior to April, 2003, DeSteph was referred by a mutual friend to a Connecticut investor (Investor) to provide investment advice in relation to an inheritance of One Hundred Thousand Dollars ($100,000) that the Investor had recently received from her mother's estate.

54. DeSteph, on behalf of TDA, offered the Investor an interest in a limited partnership that was later documented as a TDA Note, claiming that such investment would earn 6.15% with monthly payouts of Five Hundred Twelve and 50/100 Dollars ($512.50) on her investment of One Hundred Thousand Dollars ($100,000).

55. On or about March 10, 2003, DeSteph, on behalf of TDA, effected the sale of the investment to the Investor in the amount of One Hundred Thousand Dollars ($100,000).

56. When the Investor actually received the TDA Note, it provided that TDA promised to: (a) pay Four Hundred Twelve and 50/100 Dollars ($412.50) per month, not the Five Hundred Twelve and 50/100 Dollars ($512.50) previously promised, less Twelve Dollars ($12) per month service charge for 60 months; (b) share in the profits of TDA on a prorated basis at the time the note is paid; and (c) return the entire balance owed on or before January 10, 2008, unless the Investor reinvests in the TDA Advantage Trust Club in increments of five year agreements.

57. The Investor did not receive any of the promised monthly payments or share in the profits of the TDA Advantage Trust or the entire balance owed on or before January 10, 2008.

58. The Investor did not receive any payment from DeSteph on or before January 10, 2008, as was provided for in the TDA Note.

59. DeSteph failed to disclose, *inter alia*, any risk factors related to the investment, any financial information on TDA or DeSteph, that TDA and DeSteph would not make a single monthly payment or that DeSteph would use the Investor's money to pay for his personal and household expenses.

60. As of September 21, 2009, no funds had been returned to the Investor by TDA or DeSteph.

61. The TDA Note that was offered and sold by DeSteph was never registered in Connecticut, nor was it exempt from registration, nor was it a covered security.

62. DeSteph has never been registered in Connecticut as an agent of TDA, nor was he an associated person.

Based on these findings, the commissioner made the conclusions as follows:

First, under CUSA § 36b-16, a person is forbidden to offer a security unless it is registered or exempt from registration. A "security" is defined under General Statutes § 36b-3 (19) to include a "note." Since the security in this case was not registered or exempt from registration, and was sold by the plaintiff, the plaintiff violated § 36b-16.

Secondly, CUSA § 36b-6 forbids a person from transacting business as an agent unless the person is registered as an agent of the issuer. Here, the plaintiff on at least one occasion acted as an agent of an issuer, TDA, without the required registration. Therefore, the plaintiff violated § 36b-6.

Finally, CUSA § 36b-4 (a) prohibits a person in connection with the offer or sale of a security from employing any scheme or artifice to defraud or to make any untrue statement of material fact or engage in any act that operates as a fraud or deceit upon any person. Here, the plaintiff did not disclose risk factors related to the investment, did not make any payments on the security and used the invested funds for personal expenses. Such conduct violated § 36b-4 (a).

Based on these violations, the commissioner, acting pursuant to CUSA § 36b-27 (a) and (d), issued a permanent cease and desist order against the plaintiff and fines totaling $30,000 for three violations of CUSA.[2] The

[2] The current penalty provision, General Statutes § 36b-27 (d), imposes a per violation penalty of $100,000. The commissioner imposed a penalty of $10,000 per violation in keeping with the statute as it read prior to October, 2003.

plaintiff has appealed to this court from the commissioner's final decision.

The Appellate Court has set the standard of review in an appeal to the Superior Court from a final decision under CUSA. "Judicial review of [an administrative agency's] action is governed by the [Uniform Administrative Procedure Act,[3] General Statutes § 4-166 et seq.] . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *Papic* v. *Burke*, 113 Conn. App. 198, 204–205, 965 A.2d 633 (2009); see generally *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 800, 955 A.2d 15 (2008).

To the degree that the plaintiff contends that the department has not correctly interpreted CUSA, our Supreme Court has stated: "It is well established that an administrative agency's decision under the [UAPA], with respect to the construction of a statute is not

---

[3] Hereinafter, UAPA.

entitled to special deference when . . . that determination has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . Instead, well settled principles of statutory interpretation govern our review. . . . Under these principles, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of the case, including the question of whether the language actually does apply. . . . The sources to which we may look to make this determination are limited by the legislature's plain meaning rule. See General Statutes § 1-2z." (Brackets omitted; citations omitted; internal quotation marks omitted.) *University of Connecticut* v. *Freedom of Information Commission*, 303 Conn. 724, 733, 36 A.3d 663 (2012).

The first contention raised by the plaintiff is set forth in his brief from pages 5–13. He argues to the court that the department hearing officer and the commissioner ignored the "actual evidence" that his issuance of the TDA note was given, in the context of a romantic relationship with the "issuer," to memorialize an understanding between them. The court, however, in keeping with the standard of review outline above, may not retry the matter. The hearing officer's findings (adopted by the commissioner) are different from those proposed by the plaintiff, and are based upon substantial evidence in the record.[4] In addition, the hearing officer chose to believe the presentation of facts and the investor-witness. "Credibility of witnesses is a matter within the province of the administrative agency." *Spitz* v. *Board of Examiners of Psychologists*, 127 Conn. App. 108, 119, 12 A.3d 1080 (2011).

The plaintiff further argues that the department was barred from commencing the enforcement action

---

[4] The plaintiff sold the investment and was not registered with the department. (ROR, pp. 39, 272.)

against him by a statute of limitations, apparently drawn from the federal securities laws, and the doctrine of laches. The Appellate Court has stated that statutes of limitations are not binding on state entities, "unless by *express terms* or necessary implication such appears to have been *the clear intention of the legislature,* and the rights of the government are not to be impaired by a statute unless its terms are clear and explicit, and admit of no other construction." (Emphasis in original; internal quotation marks omitted.) *Joyell* v. *Commissioner of Education,* 45 Conn. App. 476, 485, 696 A.2d 1039, cert. denied, 243 Conn. 910, 701 A.2d 330 (1997). *Joyell* also holds that laches does not apply to the state. Id.[5] That ruling applies to this case where the department is acting in the public interest to prevent violations of CUSA.

The plaintiff next contends that the TDA note issued to the investor was not a "security." Section 36b-3 (19) defines "security" to include "any note." Our Supreme Court has not interpreted this definition further.[6] Cases from other jurisdictions, referring to the identical definition, have stated that while not all notes are securities notes used for investment purposes are securities. The primary consideration in this analysis is "the parties' motivations in entering the transaction"; *State* v. *Pedersen,* 122 Wn. App. 759, 767, 95 P.3d 385 (2004), review denied, 154 Wn. 2d 1028, 120 P.3d 73 (2005); and another factor is the "reasonable expectations of the investing public." Id., 769. The term "security" embodies a "flexible rather than a static principle." *Bailey* v. *Texas,*

[5] Our Supreme Court is considering an appeal that questions whether statute of limitations apply to the state, but it comes in the context of contractual language, not a regulatory action. See *State* v. *Lombardo Bros. Mason Contractors, Inc.,* 51 Conn. Sup. 265, 980 A.2d 983 (2009) (47 Conn. L. Rptr. 375), appeal pending.

[6] Similar statutes have been consistently interpreted by federal and state cases, so the court is justified under § 1-2z to rely on these cases.

Texas Court of Appeals, Docket No. 08-02-00422-CR (Eighth District, El Paso, May 1, 2008).

Under the facts as found by the hearing officer, the investor accepted the TDA note to accomplish an investment purpose. On this record, the note was issued as an investment and not as a receipt for a loan. Therefore, the plaintiff was marketing a security under CUSA. The plaintiff, who has the burden of proof on this issue, failed to establish otherwise. See also *Purvis* v. *Arizona Corp. Commission*, Arizona Court of Appeals, Docket No. CA-CV 10-0311 (February 11, 2011).[7]

The plaintiff further claims to be exempt under General Statutes § 36b-21 (b) (10) and (15) and § 36b-21 (e). These exemptions are for small issuers of securities and "covered securities." Under § 36b-21 (g), however, "the burden of proving an exemption, exclusion or an exception from a definition is upon the person claiming it." The record is devoid of any evidence produced by the plaintiff that he qualified for one of the claimed exemptions.

The plaintiff contends further that the department lacks jurisdiction over his issuance of the TDA note and that jurisdiction exists only in New Hampshire. The plaintiff did not raise this argument to the hearing officer or to the commissioner, however. Therefore, the court cannot consider it. See *Dragan* v. *Connecticut Medical Examining Board*, 223 Conn. 618, 632, 613 A.2d 739 (1992).

The plaintiff next claims that the hearing officer violated his due process rights in the conduct of the hearing. He claims specifically that he was not allowed to

---

[7] *Jeanne Piaubert, S.A.* v. *Sefrioui*, United States Court of Appeals, Docket No. 97-56131, 2000 U.S. App. LEXIS 2462 (9th Cir. February 17, 2000), cert. denied, 531 U.S. 1073, 121 S. Ct. 765, 148 L. Ed. 2d 666 (2001), relied upon by the plaintiff, is not on point. There, the facts clearly showed that stock was issued as part of a loan to inventory.

introduce at the hearing 144 documents that he tendered in evidence, that the hearing officer did not follow the rules of evidence and admitted the department's documentary evidence in error, and that the department attorney harassed him and coached a state's witness. Both the record and principles of administrative law do not support these contentions. "Due process in the administrative context is prescribed by the UAPA." (Internal quotation marks omitted.) *Spitz* v. *Board of Examiners of Psychologists*, supra, 127 Conn. App. 118, quoting *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, supra, 288 Conn. 824.

The UAPA provision governing evidence is General Statutes § 4-178: "In contested cases: (1) Any oral or documentary evidence may be received, but the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence . . . ." A hearing officer's error in admitting evidence will not justify reversal of the agency's final decision unless "substantial prejudice is affirmatively shown." *Griffin* v. *Muzio*, 10 Conn. App. 90, 94, 521 A.2d 607, cert. denied, 203 Conn. 805, 525 A.2d 520 (1987); see also *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, supra, 288 Conn. 830.

The plaintiff has failed to meet his burden to show abuse of discretion by the hearing officer on this record. The plaintiff has not provided a valid reason for contending that the hearing officer's decision to admit the department's documents did not meet the requirements of § 4-178 (1). As to his own documents, the record shows that the plaintiff decided not to continue with the hearing, leaving after the department concluded its case and while he had not finished his defense as a respondent. (ROR, transcript, pp. 197–98.) He was afforded ample opportunity to complete his case.

With regard to a claim of bias or harassment, our Supreme Court has stated: "To overcome the presumption [that the hearing officer is not biased], the plaintiff . . . must demonstrate actual bias, rather than mere potential bias . . . unless the circumstances indicate a probability of such bias too high to be constitutionally tolerable. . . . The plaintiff has the burden of establishing a disqualifying interest." (Internal quotation marks omitted.) *Moraski* v. *Connecticut Board of Examiners of Embalmers & Funeral Directors*, 291 Conn. 242, 262, 967 A.2d 1199 (2009). Moreover, a claim of bias must be raised in a timely manner. Id. The plaintiff did not raise a claim of bias at the hearing; a review of the transcript shows that the hearing officer tried to accommodate the plaintiff's presentation of his case. There were many disputes at the hearing between the plaintiff and the department's counsel, but the transcript does not show that the plaintiff was "harassed" by the counsel appearing for the department. The plaintiff was permitted to cross-examine the state's witness.

The plaintiff finally contends that the monetary penalty was excessive. However, § 36b-27 (d) at the relevant time authorized the commissioner to impose a penalty of $10,000 per violation. In this case, finding three violations, the commissioner chose the maximum penalty of $30,000. There was no abuse of discretion by the commissioner to justify this court's overturning the imposed penalty. See *Moraski* v. *Connecticut Board of Examiners of Embalmers & Funeral Directors*, supra, 291 Conn. 269: "Our task is not to second-guess the agency's choice of sanction"; *Papic* v. *Burke*, supra, 113 Conn. App. 205, requiring an abuse of discretion to reverse a final decision of the department. The sanction was within the statutory limits.

The court raised an issue for further briefing after the oral argument: Did one violation, that the plaintiff was an unregistered agent of an issuer (TDA), apply

where TDA was not yet formally in business at the time of the violation? The court now concludes that the plaintiff was in violation of § 36b-6 (a) and (b), as an unregistered agent of an issuer. An issuer is defined in § 36b-3 (13) as "any person who issues or *proposes to issue any security* . . . ."[8] (Emphasis added.) Thus, even though TDA was still being formed, it was an issuer under CUSA, and the plaintiff could not act as its agent without registering. See also *BRJM* v. *Output Systems, Inc.*, 100 Conn. App. 143, 153, 917 A.2d 605, cert. denied, 282 Conn. 917, 925 A.2d 1099 (2007): "[A] person who enters into a contract purportedly as an agent, with the knowledge that the person purportedly represented does not exist, will become a party to the contract if it is intended that the third party be bound thereby. . . . This rule is applicable to the situation presented here in which an individual contracted with a third party on behalf of an entity that had not yet been legally formed." (Citation omitted.)

The court has considered the issues raised by the plaintiff and does not find that he has met the provisions of General Statutes § 4-183 (j) for reversal of the final decision of the department. Therefore, the appeal is dismissed.

---

[8] Since the statute is clear, there is no need to turn to extrinsic materials to obtain the meaning of the statute.